FIRST SAFE DEPOSIT NATIONAL
BANK, Trustee, et al., Plaintiffs,
Appellants,

v.

WESTERN UNION TELEGRAPH COM-
PANY, Defendant, Appellee.

No. 6350.

United States Court of Appeals
First Circuit.

Heard Oct. 8, 1964.

Decided Nov. 2, 1964.

John R. McGrath, Boston, Mass., and Charles Desmaris, New Bedford, Mass., with whom Thomas H. Mahony, Edward Mahony, Boston, Mass., Joseph Lipsitt, New Bedford, Mass., Donald P. Wieners and Burke, Monaghan & McGrath, Boston, Mass., were on brief, for appellants.

Joseph P. Rooney, Boston, Mass., with whom Ansel B. Chaplin and Gaston, Snow, Motley & Holt, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

These are three diversity actions for negligence. The plaintiffs, whom we shall call the Bank, Lloyd's and Sills, were respectively the owner and two of several tenants of a commercial building in New Bedford. The defendant, Western Union Telegraph Company, was another tenant. Lloyd's occupied the ground floor at one end, and the defendant, since 1931, the ground floor at the other end. There were other ground floor tenants in between. Sills occupied the third floor. Near Lloyd's end, in a hallway that opened into the street, but which did not lead to defendant's premises, were

a number of meters and fuse boxes. So far as appears there were no marks indicating to anyone other than the electric company which tenants were served by this equipment. The identification on which plaintiffs rely was made only by following the various cables through the building. Each ground floor tenant had a basement entirely separated from the others by a brick wall. In the early morning hours of November 18, 1959 the building was seriously damaged by fire. After the fire a short-circuit, and consequent arcing, was found to have occurred in a cable at a point in the ceiling of Lloyd's basement. Plaintiffs alleged that this was the cause of the fire; that this cable supplied the defendant's electricity, and that the defendant knew or should have known of its deterioration and was responsible therefor.[1] The cases were consolidated and tried on the issue of liability. At the close of the evidence the defendant moved for directed verdicts. The court reserved action, and the jury found for the plaintiffs, "Liability, only." No judgments were entered on the verdicts. Instead, the court thereafter allowed the defendant's motions and entered judgments for the defendant.

The evidence from the plaintiffs' witnesses[2] warranted the following, in addition to the facts we have already recited. The shorted cable was composed of three insulated wires and an outer metal sheath and was known as BX. It passed through Lloyd's and the other basements, to the defendant's, and supplied defendant exclusively. It was thirty or forty years old. Although of 60 amp. capacity, and hence calling for 60 amp. fuses, it was serviced by 80 amp. fuses in an 80 amp. fuse box[3] in the hallway. During the defendant's tenancy the amount of its electrical machinery had been increased. However, its total consumption, even if operated at full capacity, was substantially less than 60 amps. Some of the connections around the fuse box were found after the fire to be loose and partially corroded. The corrosion was described as old. There was no evidence, however, that defendant had ever suffered any power interruption therefrom until after the fire, and we must conclude that these defects were not obvious.[4]

Plaintiffs' witness Torres, a captain of the New Bedford Fire Prevention Bureau, testified that the arcing of the cable had caused the fire and was probably due to a defect in the cable and an overload on a leak to the ground. On cross-examination he stated that there

---

1. Defendant makes no point of the variation between the pleading and the enlarged proof hereinafter referred to, nor do we.

2. Some of the testimony was admitted over defendant's objection. We do not consider the merits of the objections. However, we take this occasion to observe that certain evidence, such as the fact that the type of cable involved is no longer acceptable for new installations in some cities, not including New Bedford, and that persons allegedly Western Union employees had previously removed a sizable, but otherwise unidentified black box from Lloyd's cellar with Lloyd's permission, established nothing so far as defendant's liability herein is concerned. Admittedly defendant's transmission cable, a quite different and complex affair, which it owned and for which it was responsible, ran through some part of this basement. No reason has been asserted, or even suggested, to associate this box with the power cable.

3. Direct testimony that a special box was required for 80 amp. fuses came from a defendant's witness. However, not only was he a disinterested expert in no way impeached or contradicted, but 60 amp. and 80 amp. fuses were introduced in evidence through plaintiffs' witness and it is demonstrable that they are not interchangeable. We accept the testimony about the box for present purposes. See Dehydrating Process Co. v. A. O. Smith Corp., 1 Cir., 1961, 292 F.2d 653, 656, cert. den. 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194.

4. The word "loose" is a relative term. Plaintiffs' witness originally said, "not as tight as they could be." Thereafter he adopted his counsel's word "loose," but still later he returned to "not as tight as they could be." He also stated that it required disconnecting to disclose that there was corrosion of consequence.

was a "problem" whether the short-circuiting and arcing caused the fire, or was the result of the fire, and that the cellar temperature had been between 600 and 1200 degrees. Kline, a professor of electrical engineering and consulting engineer, testified for the plaintiffs that in his opinion the cause of the fire was that the wire insulation "broke down for one cause or another," thereby coming in contact with the metalic sheath; that had the ground connection not been poor, or perhaps if the fuse had been smaller, no harm would have followed, but that because of the combination repetitive arcing resulted, setting fire to the beam to which the cable was fastened. The witness subsequently gave as the cause of the breaking down of the insulation, "aging and deterioration * * * due to drying out and so forth." He did not, however, testify that the aging of BX cable was likely to have this consequence or that aging was recognized as dangerous.

Through the plaintiffs' witness Call, New England supervisor of defendant's installations, plaintiffs introduced portions of an instruction booklet showing that defendant knew that its electrical equipment should be properly cared for and fused. We have fully considered these instructions. They state nothing an ordinary informed layman does not know about the properties of electricity. Nor did they of themselves impose any duty on the defendant to inspect or care for cable which it did not install or own. The witness testified that he did not even know of this cable, and had never seen it or the fuse box. Defendant did know that its power originated from the street at the far end of the building, but no witness testified that defendant knew of this particular equipment, and on the

record as a whole we see no basis for an inference that it did.[5]

■■ Plaintiffs produced no evidence of any practice in the New Bedford area (or elsewhere) to inspect BX cable. In fact, the insulation could not be inspected without destroying the cable. Nor was there evidence of any need that was known, or that should have been known, or of any custom, to replace such cable because of age. Nor was evidence offered of any custom or obligation for a tenant to examine or maintain fuse boxes off (or on, for that matter) its premises. Thus a tenant in a building is sought to be held responsible for a defective cable not within its premises, but through which it drew electricity, which it had not installed, did not own, and did not even know of, and which defect was not shown to have been foreseeable or discoverable by anyone; and for too large a fuse, although it was the fuse called for by the fuse box, and for poor connections in the box, although, again, the tenant neither owned nor had installed the equipment, the equipment was not on its premises, and it had no notice of any defect. Plaintiffs cite no authority remotely indicating that a tenant should have so broad an obligation; nor do they suggest any reason for such a result. Apart from a general assertion of negligence, their brief is devoted to showing that the equipment in question supplied the defendant, was defective, and caused the fire. This is far from enough. We think counsel should not present a record four hundred pages long for us to scrutinize—as we must—when they have nothing to go on.

Plaintiffs raise a practice point. Citing Johnson v. New York, N. H. & H. RR., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77, they assert that the district

---

5. In oral argument it was suggested that on some prior occasion defendant might have had to discover the hallway box in order to renew the fuses. Whatever merit, if any, in view of plaintiffs' burden of proof, such a suggestion might normally have, it is overcome by plaintiffs' own evidence that these were main line fuses and that because of their out-size the cable would go before they did. There is no suggestion that the cable had failed before. Nor was the jury free to speculate, in the absence of any evidence to that effect, that on some prior occasion defendant had not only renewed the fuses, but changed the box so that larger (and useless) fuses might be accommodated.

court could not enter a judgment for the defendant in the absence of a motion for judgment n. o. v. under F.R.Civ.P. 50(b). In Cone v. West Virginia Pulp & Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849, the Supreme Court had held that notwithstanding a pre-verdict motion for a directed verdict a court of appeals had no power to enter judgment in the absence of a Rule 50(b) motion filed in the district court. The court stated that such a power in the court of appeals would mean an undesirable reduction of the discretion of the district judge, who "has the feel of the case," 330 U.S. at 216, 67 S.Ct. at 755, and might think it better that there be a new trial. In Johnson, supra, the court again denied power to the court of appeals where no motion for judgment for the defendant n. o. v. had been filed that complied with the terms of Rule 50(b). The plaintiffs point out that in the course of this opinion the court stated that "in the absence of a motion for judgment notwithstanding the verdict made in the trial court within ten days after reception of a verdict the rule forbids *the trial judge* or an appellate court to enter such a judgment." 344 U.S. at 50, 73 S.Ct. at 127 (ital. suppl.).

■ Defendant contends that we should disregard the italicized words in the Johnson opinion because they were only dictum. There is a much better reason. In Johnson the district court, two months after the entry of judgment and when it was obviously too late to file a motion complying with the provisions of Rule 50(b), acted on a pre-verdict motion. We construe the court's quoted language as meaning that, in the absence of a timely Rule 50(b) motion, whatever might be done by way of ordering a new trial no power remained to order a judgment for the defendant. "The requirement for timely motion after verdict is thus an essential part of the rule * *." Id. at 53, 73 S.Ct. at 128. In the case at

bar the court acted within six days of the verdict. Manifestly it could have asked the defendant to file an immediate Rule 50(b) motion, and have acted upon it. To say that it could not, instead, act on the reserved pre-verdict motion would be to insist upon form over substance.[6]

Judgment will be entered affirming the judgments of the District Court.

---

6. In Shaw v. Edward Hines Lumber Co., 7 Cir., 1957, 249 F.2d 434, cited by the defendant, the court held that a district court, as distinguished from the court of appeals, could enter judgment for the defendant without a Rule 50(b) motion, apparently without limit of time. We do not face that broader question.