WILLIAM D. DELANEY vs. CHIEF OF POLICE OF WAREHAM
& another.[1]

No. 88-P-766.

Plymouth. April 13, 1989. — May 31, 1989.

Present: GREANEY, C.J., ARMSTRONG, & KASS, JJ.

*Practice, Civil*, Jury issues, Special verdict, Special questions to jury, Judgment notwithstanding verdict. *Police*, Discharge, Suspension, Incapacity. *Contract*, Performance and breach. *Duress*. *Civil Rights*, Availability of remedy.

Where, at the trial of a claim for declaratory relief, the judge, on his own initiative and without objection by any party, empanelled a jury pursuant to Mass.R.Civ.P. 39(c) and then, after receiving their verdict, set aside the jury's answers to two special questions, this court proceeded to consider whether the evidence supported the jury's findings and rejected the purely technical argument that the judge could not properly set aside the jury's answers in the absence of a motion under rule 50(b) [401-402]; moreover, since the record indicated that the judge had employed the proper standard for ruling on a motion for judgment notwithstanding the verdict, it was of no consequence that the judge may have mistakenly believed answers to the special questions were purely advisory [402-403].

A voluntary agreement by a police officer to forgo benefits under G. L. c. 41, § 111F, and to accept a leave of absence or a suspension in exchange for a town's dropping disciplinary proceedings against him was not invalid as matter of law. [403]

In an action arising from a dispute between the plaintiff, a police officer and the town that employed him over the validity of two agreements under which the plaintiff agreed to forgo benefits under G. L. c. 41, § 111F, and to accept a leave of absence or a suspension in exchange for the town's dropping disciplinary proceedings against him, the plaintiff's evidence was insufficient to support a finding by the jury that the agreements by which he relinquished his right to benefits under § 111F were invalid because his assent was obtained by "illicit means, coercion and duress"; moreover, with respect to the plaintiff's civil rights claim under G. L. c. 12, § 11I, the evidence was insufficient to support a finding that the agreements were the product of a threat, intimidation, or coercion. [403-409]

---

[1] Paul J. Cardalino, a police lieutenant in Wareham.

CIVIL ACTION commenced in the Superior Court Department on December 9, 1985.

The case was tried before *Allan M. Hale, J.*

*Philip N. Beauregard (Richard E. Burke, Jr.*, with him) for the plaintiff.

*Mary Alice McLaughlin* for Chief of Police of Wareham.

GREANEY, C.J. This lawsuit stems from a dispute between the plaintiff, a police officer in Wareham, and the town over the validity of two agreements. The agreements were signed while proceedings were pending to discharge the plaintiff from the police force at the time he was receiving benefits under G. L. c. 41, § 111F. In the first agreement, executed on November 20, 1984, the plaintiff withdrew his claim for § 111F benefits and took an unpaid leave of absence of not less than one year, in exchange for the town dropping the pending disciplinary proceedings. The agreement also called for psychological testing as a condition to the plaintiff's rejoining the police force. In the second agreement, executed on January 8, 1985, the provision for a leave of absence was changed to an eighteen-month suspension, and the plaintiff was given up to six months to pass the psychological examination required for his return to work.

On December 9, 1985, the plaintiff filed a complaint in the Superior Court against the town of Wareham, its board of selectmen, and the present defendants. Insofar as still relevant, the action sought a declaratory judgment under G. L. c. 231A that the agreements by which he relinquished his right to benefits under G. L. c. 41, § 111F, were invalid because his assent was obtained by "illicit means, coercion and duress." The complaint also sought damages for alleged violations of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I.

A judge of the Superior Court empanelled a jury, which heard the evidence. At the conclusion of the plaintiff's case, and again at the conclusion of all the evidence, the defendants moved for a directed verdict pursuant to Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974). The motions were allowed as to the town and the selectmen and denied as to the police chief and

the defendant Cardalino. The judge submitted the case to the jury on a "special jury verdict" containing ten questions, including the questions and answers set forth below which are involved in the decision of this appeal.[2] Following acceptance of the special verdict, the judge indicated to counsel that the "entry of judgment will be deferred until counsel have had an opportunity to address me on the aspects of the case which are in the equity domain and [on] which I will have to make my own judgment." The defendants filed no motion under Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), for judgment notwithstanding the verdict.

Thereafter, the judge entered a document entitled "Findings, Rulings and Orders." In the document, the judge outlined the plaintiff's contentions concerning the invalidity of the agreements because of duress and coercion. The judge stated that "[t]he decisions as to these matters were submitted for the court's determination. However, for the assistance of the court, special questions 1 and 2(a) were submitted to the jury and they answered both affirmatively and thus advised the court that the plaintiff's waiver of his rights . . . was not voluntary and was without effect." The judge then stated that "the evidence was insufficient to support the jury's answers to questions 1 and 2(a)," and he indicated that he would "disregard them

_____

[2] 1. With regard to plaintiff Delaney's written Agreement(s) to take a one-year leave of absence, or suspension, from the Wareham Police Department, do you find that plaintiff Delaney's withdrawal of 111F rights was made under duress, coercion or undue influence from his employer?
  YES.
  2(a). If your answer to No. 1 is "YES," do you find that the Town of Wareham, through intimidation or coercion or threats, interfered with plaintiff Delaney's rights under chapter 41, section 111F?
  YES.
  2(b). If your answer to No. 1 is "Yes", do you find that the Town of Wareham, through intimidation or coercion or threats, interfered with plaintiff Delaney's due process rights?
  NO.
  3(b). If your answer to 2(a) . . . is "YES" what damages do you find plaintiff Delaney suffered (other than loss of wages and medical expenses) as a result of the violation of his 111F rights?
  No dollars. $.00

and order them vacated."[3] The judge next proceeded to discuss
the evidence and to conclude that "the plaintiff knew what was
going on, that he understood the proceeding[s] and signed [the
agreements] voluntarily and with full understanding of their
meaning." A judgment entered, entitled "Judgment on Findings
By the Court," which vacated the jury's answers to questions
1 and 2(a) and determined that the agreements by which the
plaintiff relinquished his right to benefits under G. L. c. 41,
§ 111F, were knowingly and voluntarily made by him and,
therefore, valid. The judgment also disposed of the other claims
in the case, which are no longer in issue. No postjudgment
motions were filed. The plaintiff has appealed.

1. The plaintiff argues that the judge, having empanelled a
jury under Mass.R.Civ.P. 39(c), 365 Mass. 802 (1974),[4] in
connection with the declaratory judgment action was bound
by the jury's answers, and that the judge's setting aside of the
verdict amounted to the grant of a judgment notwithstanding
the verdict under Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974).
He contends that such action was improper in the absence of
a motion by the defendants for judgment n.o.v.

The plaintiff correctly points out that a judge proceeding
under rule 39(c) may, in the exercise of discretion, empanel
a jury to decide issues of fact in a case not triable as of right
by a jury, see *Charles River Constr. Co.* v. *Kirksey*, 20 Mass.
App. Ct. 333, 337 (1985), and G. L. c. 231A, § 1, and that
jury verdicts rendered under such a procedure are binding and
not merely advisory. See *Westfield Sav. Bank* v. *Leahey*, 291
Mass. 473, 475 (1935), and cases cited. See also Reporters'
Notes to Mass.R.Civ.P. 39, Mass. Ann. Laws, Rules of Civ.P.
at 176-177 (Law. Co-op. 1982); Smith & Zobel, Rules Practice
§ 39.5 (1977). This general observation aside, the record is
extremely unclear on the jury's role in this case. None of the
parties filed a motion to have jury issues framed under rule

---

[3] The judge, however, accepted the jury's answers to the other questions
which did not pertain to the declaratory judgment proceedings.

[4] "(c) *Framing Jury Issues.* In all actions not triable of right by a jury,
the court, except where otherwise provided by law, may upon motion frame
issues of fact to be tried by a jury."

39(c). Such a motion is usually required to invoke the rule. Smith & Zobel, Rules Practice § 39.5. Nevertheless, the case was tried to the jury on the issues framed in the special questions with the parties' assent. In this respect, the parties should be bound by the procedure because at no point did they object to it.

The judge appears to have mistakenly assumed that the jury's answers to questions 1 and 2(a) were purely advisory because he speaks in his decision of the answers as having "advised the court." The judge also indicated that he considered the plaintiff's evidence "insufficient to support the jury's answers to questions 1 and 2(a)." This language reveals that the judge was, essentially, applying the standard to be used when ruling on a motion for a directed verdict or a motion for judgment n.o.v. Consistent with his observations, the judge vacated the jury's answers to questions 1 and 2(a) on the basis of the insufficiency of the plaintiff's evidence, and he went on to observe that the evidence established that the plaintiff had signed the agreement knowingly and voluntarily. When the plaintiff received the judge's decision he filed no motion either to press the position he now takes on appeal, namely, that the judge could not set aside the jury verdict in the absence of a motion of the defendants under rule 50(b), or to attempt to clarify the record on what actually had occurred. The defendants also remained silent throughout except for filing and arguing a motion under rule 50(a) for a directed verdict at the conclusion of the plaintiff's case and renewing that motion at the conclusion of all the evidence. They may have assumed that the judge was acting within his authority in fashioning a judgment that varied from the jury's responses consistent with the judge's stated remarks after the trial that there were "aspects of the case . . . in the equity domain . . . [on] which I will have to make my own judgment . . . ."

In view of the judge's stated basis for setting aside the jury verdict — that he considered the evidence insufficient to support the jury's findings — we think the case should be analyzed as if a motion for judgment n.o.v. under rule 50(b) had been filed by the defendants and allowed by the judge. Under rule

39(c), a jury verdict otherwise binding is subject to the court's common law supervisory powers, *Crocker* v. *Crocker*, 188 Mass. 16, 20 (1905), and thus subject to a postverdict motion under rule 50(b) testing the sufficiency of the evidence. See Smith & Zobel, Rules Practice § 39.5. We are unimpressed with the plaintiff's argument that the absence of a rule 50(b) motion precludes such an analysis in this case. The plaintiff and the defendants appear to have harbored different views on the roles to be played by the judge and the jury. The defendants, however, filed and argued a rule 50(a) motion, and the plaintiff does not argue that the motion was improper in any respect. The unusually confused and contradictory procedural circumstances of this trial, particularly the unclear role of the "advisory" jury, permit a relaxation of the requirement for proper foundational pleadings that normally applies. Cf. *Shaw* v. *Edward Hines Lumber Co.*, 249 F.2d 434 (7th Cir. 1957); *First Safe Deposit Natl. Bk.* v. *Western Union Tel. Co.*, 337 F.2d 743 (1st Cir. 1964); *Ebker* v. *Tan Jay Intl., Ltd.*, 739 F.2d 812, 821-823 (2d Cir. 1984); *Norton* v. *Snapper Power Equip., a Div. of Fuqua Indus., Inc.*, 806 F.2d 1545, 1547 (11th Cir. 1987); *Nichols Const. Corp.* v. *Cessna Aircraft Co.*, 808 F.2d 340, 356 (5th Cir. 1985). We, therefore, reject the plaintiff's argument that the judgment should be reversed on the purely technical ground that a motion for judgment n.o.v. was not filed, and we proceed to consider the merits.

2. We disagree with the plaintiff that a voluntary agreement by a police officer to forgo G. L. c. 41, § 111F, benefits in exchange for a leave of absence or the imposition of a suspension is invalid as matter of law. The analogy the plaintiff attempts to draw between § 111F, and G. L. c. 152, § 46, of the Workers' Compensation Act is inapposite. The decisions in *Jones* v. *Wayland*, 374 Mass. 249, 260 (1978), and *Hennessey* v. *Bridgewater*, 388 Mass. 219, 224-227 (1983), resolve this issue adversely to the plaintiff.

3. In deciding if the plaintiff's evidence was sufficient to support the jury's findings, we inquire whether the evidence considered in the light most favorable to the plaintiff supports any reasonable inference in his favor. See *Raunela* v. *Hertz*

*Corp.*, 361 Mass. 341, 343 (1972); *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 489-490 (1983).

There was evidence that the plaintiff began working as a police officer in 1975 and became a K-9 officer in 1980. On September 19, 1984, he received a disciplinary letter setting out various incidents of insubordination and violations of departmental rules and regulations. As punishment, the plaintiff was assigned a permanent walking beat (without a dog) and given forty hours of extra duty. On the same day that he received this letter, the plaintiff fell off a broken step while leaving the police station and hurt his back. Shortly thereafter, he began to receive benefits under G. L. c. 41, § 111F.

On or about October 3, 1984, the police department was advised of a further possible infraction by the plaintiff. On October 17, 1984, after investigation, the department delivered a civil service hearing notice to the plaintiff based on the infractions listed in the previous letter and on the new infraction concerning the plaintiff's K-9 dog. The dog had been picked up at the plaintiff's residence after the police department had been advised that the dog needed exercising and that the plaintiff no longer lived at home. The notice scheduled a hearing before the acting town administrator to consider whether the plaintiff should be discharged from the police force.

On November 20, 1984, while at a meeting concerning the disciplinary complaints, the plaintiff signed the first agreement withdrawing his § 111F claim and removing himself from § 111F status. In exchange, the pending disciplinary proceedings were to be dropped, and the plaintiff was granted an "unpaid leave of absence [of] not less than one year's duration." The agreement further provided that the plaintiff's return to work was conditioned on his satisfactory completion of psychological testing. The plaintiff also signed a separate waiver of his § 111F rights. These arrangements were made in the presence of the union shop steward.

At this meeting, the plaintiff asked the defendant, Lieutenant Cardalino, who would be responsible for his medical expenses. He was told "not to worry about it" because the town would still be liable. The plaintiff also asked Cardalino what would

happen if he did not sign the agreement and waiver of § 111F benefits and was told that "[w]e are going to fight it. We'll take you to the selectmen meeting." The plaintiff told a fellow officer (the union shop steward) that he was taking a "year's leave of absence," and that he wanted the officer to witness what was being said. At this time the plaintiff was experiencing back pain and wearing a back brace. The plaintiff testified he was taking medication ("pain killers"), and "drinking a lot." During the last two weeks of November, 1984, he specifically stated that he "lost time frame" and "just drank." The plaintiff was also having serious marital difficulties. He further testified that he had read the agreement before signing it and that it was what he wanted to do. Specifically, the plaintiff indicated that he wanted to take a year off without pay to "straighten out."

On or about November 29, 1984, the town administrator sent a letter to the plaintiff informing him that the town would "resume a hearing" on December 14, 1984 (which was later continued to January 8, 1985) for the purpose of considering his discharge from the police force. The meeting was intended, among other things, to finalize and "sanction" the November 20 agreement. The same infractions detailed in the prior civil service notice were again listed.

On January 8, 1985, the parties assembled before the town administrator. The plaintiff was represented by a police union representative. The charges were read and, according to the plaintiff's testimony, "everything was out in the open, and just to sanction the agreement I had, I sat there, there was some talk, they pushed papers around." The plaintiff was afforded an opportunity to testify on the charges but declined to do so on the advice of the union representative. Another agreement was passed to the plaintiff which he signed. This second agreement contained one major difference from the prior agreement: it placed the plaintiff on an eighteen-month "suspension," instead of granting him a one-year "leave of absence." The plaintiff did not reexecute the earlier, separate waiver of his § 111F benefits.[5]

---

[5] On the same day, the plaintiff was given notice of his right under G. L. c. 31, § 42, to appeal his suspension to the Civil Service Commission. The plaintiff exercised that right on March 22, 1985. On May 2, 1985, the Civil

At the time of the execution of the second agreement, there was no change in either the plaintiff's back condition or his use of medication or alcohol. The plaintiff testified that he had been drinking during the night before the meeting. The union representative smelled liquor on the plaintiff at the hearing, and the plaintiff's wife, who was also present, stated that she believed that the plaintiff was "emotionally disturbed."[6] The plaintiff first became aware of the fact that the second agreement called for a suspension rather than a leave of absence three weeks later. He subsequently returned to work on the police force in 1986 in accordance with the terms of the second agreement.

(a) In order to avoid the agreements because of duress,[7] the plaintiff had to show "that conduct by the other party caused him to enter into the contract 'under the influence of such fear as precludes him from exercising free will and judgment.'" *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 22 (1983), quoting from *Avallone* v. *Elizabeth Arden Sales Corp.*, 344 Mass. 556, 561 (1962). *Cappy's, Inc.* v. *Dorgan*, 313 Mass. 170, 174 (1943). We have said that duress constitutes "a wrongful or unlawful act or threat . . . which deprives the victim of his unfettered will," resulting in the threatened party being "compelled to make a disproportionate exchange of values." *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.*, 8 Mass. App. Ct. 340, 342 (1979), quoting from 13 Williston, Contracts

---

Service Commission voted to dismiss the appeal because it was untimely filed. The plaintiff subsequently filed a petition for review in the Boston Municipal Court which was still pending at the time of trial.

[6] Other evidence of plaintiff's mental condition came from a psychiatrist who began treating the plaintiff in late August, 1986. The psychiatrist testified that the plaintiff was suffering from major depression, but that he did not really know what plaintiff's condition was in 1984 except from "secondary . . . information." The plaintiff never made any § 111F claim involving any mental or psychological disability.

[7] In this case, the terms duress and coercion were used synonymously. The judge also considered the evidence as raising a claim of undue influence, which was also basically treated as subsumed within the duress claim. We will refer to all these claims as ones for duress.

§ 1617, at 704 (3d ed. 1970). Not only must there be a wrongful or improper act or threat, but the act or threat must overcome the party's desire and undermine the agreement. See *Fleming* v. *Dane,* 298 Mass. 216, 218 (1937). Moreover, absent compelling circumstances, the availability of a reasonable alternative, such as a legal or administrative remedy, will defeat a claim of duress. Restatement (Second) of Contracts § 175 comment b (1979). See *Willett* v. *Herrick,* 258 Mass. 585, 603, cert. denied, 275 U.S. 545 (1927); *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.,* 8 Mass. App. Ct. at 346.

The crux of plaintiff's claim of duress is that, at the time he executed the agreements to waive his § 111F rights, he was "intoxicated, medicated, and emotionally disturbed." He asserts that the agreements were executed under threat of being fired which, in turn, was based upon "trumped up" allegations reinstituted after he was injured and placed on § 111F status.

There is no evidence to support a finding that the disciplinary charges against the plaintiff were "trumped up" or lacked a basis in fact. The plaintiff never questioned or sought to challenge the original set of infractions, and he was never subjected to the punishment imposed for these infractions. The subsequent incident involving the dog, together with the prior infractions, gave the defendants a reasonable basis upon which to pursue the plaintiff's discharge. The fact that the charge involving the dog was eventually dropped at the January 8, 1985, hearing is of no consequence. The decision to abandon the charge was a judgmental concession on the part of the town administrator which would not warrant a finding that the disciplinary action against the plaintiff was unfair or brought in bad faith.

The fact that the plaintiff was advised that if he did not sign the first agreement the town would go ahead with the hearing to discharge him does not constitute duress. An indication that a party intends to pursue lawful legal proceedings if the other party fails to accept a pending settlement offer will not, normally, constitute duress. The settlement offer involved no misuse of process or the making of an exorbitant demand. See

Restatement (Second) of Contracts § 176 comment d. Moreover, at all times, the plaintiff had available to him the alternative of defending himself at the hearing and seeking review of any decision to discharge or discipline him either in court or with the Civil Service Commission.

The plaintiff's excessive drinking, taking of pain-killing medication, and marital problems may, of course, have made him susceptible to duress. However, susceptibility alone, without a wrongful or improper act or threat, will not establish duress. Moreover, the plaintiff admitted in his testimony that he wanted a year off from the police force "to straighten out." He also testified that he signed the first agreement voluntarily, and the second agreement without reading it. It is also significant that the plaintiff accepted the benefits of the agreements by taking a year off and availing himself of the opportunity the agreement provided him to rejoin the police force. At the execution of both agreements, he was assisted by a union representative.

Although mindful that in most cases duress is an issue of fact, the evidence of the plaintiff's drinking, his use of pain-killers, and his emotional distress because of marital difficulties is not adequate to warrant a finding of duress here.[8] The plaintiff's evidence does not support a conclusion that the defendants' conduct overcame the plaintiff's mind and will, or that the defendants had acquired such dominion over him that he was a pawn in their hands. See *Freeman* v. *Teeling*, 290 Mass. 93, 95 (1935); *Fleming* v. *Dane*, 298 Mass. 216, 218-219 (1937); *Surrender of Minor Children*, 344 Mass. 230, 235-236 (1962) (despite coercive nature of circumstances no basis for finding duress in mother's decision to surrender child as circumstances were properly and unmistakenly in contemplation of the mother and represented good reason for her action).

---

[8] The assurance given the plaintiff prior to the execution of the first agreement that his medical bills would be paid does not improve his case. There is no claim that the agreements were induced by misrepresentation, and the evidence will not support a conclusion that the statement either vitiated consent to the arrangement or amounted to duress.

(b) The jury's answer to special question 2(b), that the town and its representatives had not interfered with the plaintiff's due process rights by means of intimidation, coercion or threats, appears to have decided the plaintiff's claim under G. L. c. 12, § 11I, in the defendants' favor. The plaintiff argues, however, that the jury's answer to special question 2(a) creates a separate basis for finding that his rights under G. L. c. 12, § 11I, were violated. Essentially, for the reasons stated above, the plaintiff's evidence would not support a finding that the agreements were the product of a threat (acts or language by which another is placed in fear of injury or damage), intimidation (creation of fear to compel conduct), or coercion (the active domination of another's will). See *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 99-100, and the dissenting opinion at 104 (1987).

4. The foregoing addresses the principal contentions raised by the plaintiff in an effort to reverse the judgment. His other contentions either were not raised below or are without merit.

*Judgment affirmed.*