246 N.J. Super. 261 (1991)
587 A.2d 298
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JACOB LEON OATES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 1990.
Decided February 26, 1991.
*264 Before Judges PRESSLER, BAIME and ARNOLD M. STEIN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief and supplemental letter brief).
*265 Stephen G. Raymond, Burlington County Prosecutor, attorney for respondent (Ellen J. Stern, Assistant Prosecutor, of counsel and on the brief).
The opinion of the Court was delivered by ARNOLD M. STEIN, J.A.D.
Defendant was found guilty of possession of cocaine (N.J.S.A. 24:21-20a(1)), possession of cocaine with intent to distribute (N.J.S.A. 24:21-19a(1)), and distribution of cocaine (N.J.S.A. 24:21-19.1a(1)). The trial judge sentenced defendant to three concurrent five-year terms, each with a two-and-one-half-year period of parole ineligibility. A total VCCB penalty of $90 was also imposed. We reverse because the voir dire conducted by the trial judge during the jury selection process was so inadequate that it deprived defendant of his constitutional right to a fair and impartial trial by jury. N.J. Const. of 1947 art. I, para. 9.
The State presented evidence that defendant sold one gram of cocaine to Robert O'Leary, an undercover narcotics detective for the New Jersey State Police. The sale took place at defendant's residence. O'Leary testified that he paid defendant $50 for the cocaine. Defendant presented no defense. He attempted to demonstrate that he was the victim of either contrived evidence or mistaken identity.
In addition to asking specific background questions (residence, occupation, marital status and occupation of spouse if married) of the individual jurors seated in the box, the trial judge addressed three general questions to the entire panel:
[H]ave you ever previously participated in a criminal jury trial, either as a juror or as a witness?
....
Let me ask if you or any person close to you, a close relative or a close friend, has been the victim of any type of crime?

*266 ....
[D]o any of you have a person who is close to you by way of either being related or a friend who is engaged in police work as a policeman, patrolman, a detective, a marshal, a jail guard, anything of the sort?.
The trial judge refused defense counsel's request that the jurors be asked the following questions:
[W]hether or not the fact that a given witness may be a police officer would ... cause them to tend to credit his testimony more or less than any other witness.
....
[W]hether or not any of the jurors have had any friends or relatives who have experienced a drug problem.
In refusing to ask the first question the judge stated:
I have seen that question asked two times, and both times it was a disaster for the defendant.
The one  the first time in front of me, the juror was very articulate. He thought for a minute. He says, "Yes, I would because I would believe a police officer."
And I said, "Well, why is that, sir?"
He said, "Well, by training and occupation he's trained to observe and remember."
....
The other one, ... said, "Yeah, I think I [would] believe the police officer first."
I said, "Well, why is that?"
She said, "The Defendant's got more to lose than he does."
I think it is a very troublesome question and I over the years have consistently declined to ask that.
He refused to ask the second question because of a response from a prospective juror in an earlier case:
Well, I can't help telling you within the last month I tried a case where the Defendant was charged with distributing drugs, and I didn't ask that question but I asked the  as we went along, routinely I asked each juror is there any reason personal to you why you could not be objective?
[A juror] said to me, "Judge, they made a drug addict out of my son and I think that anybody who sells drugs ought to go away for a long time."
....
She said, "It ruined my son's life."

*267 So, I'd rather stay away from that. I think it's a double-edged sword and I'm not afraid of offending the jurors. That's not it, embarrassing a juror by having to admit that some member of their family had such trouble.
But, as I say, I think it's potentially as harmful or more harmful than it is beneficial for the Defendant; so again I'll decline that.
As a substitute for the second question, the trial judge asked the prospective jurors that which a judge is obliged to ask in every jury trial, although in less limiting language:
Is there anything, any reason personal to you with respect to this type of case why you could not do a good job as a juror, why you could not be fair and impartial? (emphasis added)
This question is too narrow an inquiry. The question should be whether the juror can think of any reason whatsoever, because of the facts of the particular case or otherwise, why he or she could not serve as a fair and impartial juror.
We reject the notion that a trial judge should not ask prospective jurors certain questions simply because the answers might be unfavorable or unpleasant to a party. A prompt instruction to the jury on weighing credibility and remaining impartial, tailored if necessary to the particular answer, should usually dissipate any harm resulting from a juror's response which displays or suggests bias. A voir dire designed to explore potential bias is essential to an impartial jury. State v. Hunt, 115 N.J. 330, 348, 558 A.2d 1259 (1989). Only through a thorough voir dire can counsel determine whether to seek disqualification of a person for cause and to make informed decisions in exercising peremptory challenges. See State v. Williams (II), 113 N.J. 393, 408, 550 A.2d 1172 (1988).
The requested questions should have been asked by the judge. Ability of a prospective juror to impartially weigh the credibility of a witness engaged in law enforcement was especially required in this case. The State's only witnesses were two State troopers and the defendant challenged their credibility.
*268 Additionally, the judge did not cover certain areas which we deem essential to a proper examination of prospective jurors in every criminal case. He did not:
1. Explain to the jury that the indictment is merely a vehicle for bringing the defendant to trial and is not evidence of defendant's guilt. State v. Orecchio, 16 N.J. 125, 132, 106 A.2d 541 (1954). This instruction was also omitted from the final charge to the jury.
2. Inquire whether they, close family members or close friends have ever been accused of any violation of the law other than a simple traffic violation.
3. Ask whether any juror has ever served on a grand jury; and if there was previous grand jury service, explain briefly the difference between functions of grand juries and trial juries.
4. Ask whether any juror has ever served on a civil trial jury; and if so, explain that there are different burdens of proof in civil and criminal cases.
5. Explain to jurors that while they are judges of the facts he is the judge of the law and they must apply the law given by the judge to the facts as they find them, even where they disagree with the instruction given; and inquire further whether they would follow or disregard a principle of law given by the trial judge if they disagreed with that legal principle.
In State v. Manley, 54 N.J. 259, 255 A.2d 193 (1969) the New Jersey Supreme Court deplored the then-established practice of lengthy, lawyer-conducted jury interrogation:
[G]enerally courts favor eliminating the waste of time and money, the undue burden imposed on court personnel, on court room facilities, and on already congested trial calendars  to say nothing of subversion of the true purpose of juror examination. The remedial movement is toward adoption of methods designed to restore the fundamental basis for preliminary questioning, i.e., an expedient selection of a fair and impartial jury, one that will decide the case fairly under the evidence presented and the instructions of the court. Obviously a most important method is to limit more stringently the conduct and scope *269 of the voir dire. Essentially this means eliminating the efforts to indoctrinate, to persuade, to instruct by favorable explanation of legal principles that may or may not be involved, to lecture on the law and the facts and the relation of one to the other, the lecture ending in a question for form's sake. It means also a prohibition of the hypothetical question intended and so framed as to commit or to pledge jurors to a point of view or a result before they have heard any evidence, argument of counsel or instructions of the court.
....
The impression is inescapable that the aim of counsel is no longer exclusion of unfit or partial or biased jurors. It has become the selection of a jury as favorable to the party's point of view as indoctrination through the medium of questions on assumed facts and rules of law can accomplish. [Id. at 280-81, 255 A.2d 193] (emphasis supplied)
To remedy the situation lamented in Manley, our Supreme Court adopted R. 1:8-3(a), effective September 8, 1969:
(a) Examination of Jurors. For the purpose of determining whether a challenge should be interposed, the court shall interrogate the prospective jurors in the box after the required number are drawn without placing them under oath. The parties or their attorneys may supplement the court's interrogation in its discretion....
R. 1:8-3(a) is a rule of efficiency, not of dilution. It was designed to expedite, not minimize the essential purpose of obtaining a fair and impartial jury. A thorough voir dire, as necessary as is required for the particular matter on trial, must be conducted in every case. See State v. Williams (I), 93 N.J. 39, 68-69, 459 A.2d 641 (1983). The limited jury questioning in this case commends itself only for its brevity. It assisted the State and the defendant very little in the quest to assure impartiality and to unearth predisposition, bias or outright hostility. Defendant was deprived of his constitutional right to a fair trial. State v. Hunt, supra, 115 N.J. at 348, 558 A.2d 1259.
We find no merit in defendant's contention that the trial judge should have conducted a hearing to determine whether Detective O'Leary's in-court identification was tainted by a viewing of defendant's photograph before trial. R. 2:11-3(e)(2). O'Leary testified that he spent forty-five minutes talking with defendant in defendant's kitchen before completing the *270 purchase of the cocaine. There was no substantial likelihood of irreparable misidentification. State v. Madison, 109 N.J. 223, 232-33, 536 A.2d 254 (1988). For this reason, there is no merit in defendant's contention that his attorney's failure to object to O'Leary's in-court identification constituted ineffective assistance of counsel.
Because the matter is remanded for retrial we need not decide the other questions raised by defendant in his appeal brief.
Reversed and remanded to the Law Division for a new trial.