## COMMONWEALTH *vs.* RICARDO GITTENS.

No. 00-P-1065.

Suffolk. February 12, 2002. - June 12, 2002.

Present: BECK, GILLERMAN, & KAFKER, JJ.

*Practice, Criminal,* Motion to suppress, Voluntariness of statement, Examination of jurors, Voir dire, Instructions to jury. *Evidence,* Voluntariness of statement, Cross-examination, Bias. *Jury and Jurors. Witness,* Cross-examination, Bias. *Words,* "Threat."

Spontaneous and voluntary statements made by a criminal defendant to a police officer while being booked were not the product of an improper interrogation, and the statements were properly admitted in evidence at trial. [149-150]

At a criminal trial, the judge did not abuse her discretion in declining to conduct an individual voir dire of two jurors who had indicated familial relationships with law enforcement officials on their juror questionnaires, where the defendant did not carry his burden of showing a substantial risk that such relationships might constitute an extraneous influence on the jurors' decisions. [150-152]

In a criminal case in which the defendant was indicted under G. L. c. 268, § 13B, for intimidation of a witness "by threats of force," prior to the statute's amendment in 1996 inserting the phrase "express or implied" before "threats," the judge's charge to the jury, which instructed that the offense required proof of "express or implied threats," did not improperly introduce a new theory of liability, where the statutory amendment merely clarified the meaning of "threat," as it had been used in statutes and case law, to include both express and implied threats, and where, in any event, the threat made by the defendant was express. [153-155]

At a criminal trial, the judge did not abuse her discretion in limiting the defendant's cross-examination of a police witness concerning an alleged "code of silence" among police officers, where there was no support, other than the defendant's own speculation, for the inquiry. [155-156]

INDICTMENTS found and returned in the Superior Court Department on May 7, 1996.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan,* J., and the cases were tried before her.

*Robert L. Sheketoff* for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. Boston police Officer Carlton Williamson was shot at while pursuing the defendant, Ricardo Gittens, and another man after he witnessed them trying to break into a car. While being booked, the defendant recognized Williamson from the neighborhood in which they both lived. He told Williamson that he did not know it was him, and asked him to "squash this." When Williamson responded with disbelief, the defendant informed Williamson that he knew what kind of car the officer drove and where he lived, and that he intended to "get" him.

Following a jury trial in Superior Court in June, 1998, the defendant was convicted of breaking and entering a motor vehicle at night with intent to commit a felony, intimidation of a witness, unlawful possession of a firearm, and unlawful possession of ammunition. The defendant was acquitted of armed assault with intent to murder.

On appeal, the defendant argues that the judge erred when she (1) denied his motion to suppress the statements he made to Williamson during the booking; (2) refused to conduct individual voir dire of two jurors who were related to police and law enforcement officials; (3) instructed the jury that they could convict him on implied as well as express threats; and (4) refused to allow him to cross-examine a police officer witness regarding police culture. For the reasons discussed below, we affirm.

1. *Motion to suppress.* The defendant challenges the denial of his motion to suppress the statements he made to Williamson while being booked. We summarize the facts found by the judge in her ruling on the defendant's suppression motion supplemented by uncontroverted facts adduced at the hearing that are referenced in note 1, *infra*. See *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001).

During the booking process, before he received Miranda warnings, the defendant responded to the booking officer's questions until Williamson entered the booking area. Upon seeing Williamson, the defendant said, "Yo, Carlton. I didn't know it was you. Let's squash this." Williamson responded, "You just

shot at me."[1] The defendant then became angry and said, "I know where you live. You drive a Bema [i.e., a BMW automobile]. We're going to take care of you. I'm going to get you." In denying the defendant's motion to suppress, the judge ruled that the defendant's "first statement was spontaneous and unprovoked," and that the latter statements were also volunteered. We agree.

*Miranda* does not protect volunteered statements. *Miranda* v. *Arizona*, 384 U.S. 436, 478 (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"). See *Commonwealth* v. *Diaz*, 422 Mass. 269, 271 (1996). The defendant's first statement — "I didn't know it was you" — was voluntary and unprovoked. Williamson's response to the defendant was not an improper interrogation, as the defendant asserts, but rather a natural reflex invited by the defendant's comments. See *Commonwealth* v. *Diaz*, 422 Mass. at 271 (detective's response to volunteered comment a natural reflex action). Similarly, the defendant's subsequent comments, although incriminatory, were volunteered, and were not the product of any improper probing. *Ibid.* By threatening Williamson, the defendant did not respond to any question, but simply pursued his initial request to "squash this" using a different, more aggressive, tactic. The defendant's statements were properly admitted.

2. *Voir dire on jurors' relationship to law enforcement or police officers.* Relying on G. L. c. 234, § 28,[2] the defendant argues that the judge should have conducted individual voir dire of two jurors, both of whom indicated a relationship with law enforcement officials on their juror questionnaires. During impanelment, in addition to the questions required by statute, the

---

[1]The judge found that Williamson said, "You just shot at me." Williamson testified that he said, "You're crazy. How can we squash this? You guys just shot at me." Williamson's testimony contains a rhetorical question. The judge's recounting of the officer's statement and the officer's own recounting of it express the same sentiment; neither could be construed as an interrogation.

[2]As provided in G. L. c. 234, § 28, "Upon motion of either party, the court shall . . . examine on oath a person who is called as a juror . . . to learn whether he is related to either party or has any interest in the case, . . . or is sensible of any bias or prejudice, therein."

judge asked all prospective jurors whether they could be fair and impartial and informed the panel that the case dealt with assault with intent to murder a police officer. The judge also asked the potential jurors whether they "would weigh the testimony of a police officer differently from that of a civilian simply because the person was a police officer?"[3] Neither of the two prospective jurors who were related to law enforcement officials raised issues in response to these questions. When the defendant requested additional questioning of these two jurors, the judge refused, stating that although one juror's brother was an assistant district attorney and the second juror's sister was a State police trooper, she would not "further inquire simply because of their relationship to someone who is in law enforcement." The defendant used all of his peremptory challenges prior to the conclusion of the impanelment process, including two challenges to remove the two jurors in question.

"Under G. L. c. 234, § 28, the judge must examine the jurors individually when it appears that issues extraneous to the case might affect the jury's impartiality. . . . Ordinarily, it is for the judge to determine whether the jury might be influenced by an extraneous issue, and we will not disturb that determination 'unless the complaining party demonstrates that there was a substantial risk that the case would be decided in whole or in part on the basis of extraneous issues.' " *Commonwealth* v. *LaFaille*, 430 Mass. 44, 50-51 (1999), quoting from *Commonwealth* v. *Grice*, 410 Mass. 586, 588 (1991). Here, the defendant recognizes that "there was no extraneous influence that required individual voir dire of the entire venire." He argues, however, that there was a substantial risk of extraneous influence regarding jurors with family ties to law enforcement officials because they "could have viewed Officer Williamson as a surrogate for their siblings."

We have been presented with no Massachusetts appellate court decisions in which a potential juror's family tie to law

---

[3]The judge was not required to ask this question. *Commonwealth* v. *Sheline*, 391 Mass. 279, 291 (1984). However, "ordinarily a trial judge should comply with a defendant's request to ask prospective jurors whether they would give greater credence to police officers than to other witnesses, in a case involving police officer testimony." *Ibid.* See *Commonwealth* v. *Szczuka*, 391 Mass. 666, 672 (1984).

enforcement has been deemed by itself to be an extraneous influence. Nor have we identified a case in which a substantial risk of extraneous influence has been found to arise from a judge's failure to conduct additional questioning of a juror with such a relationship. Rather, potential jurors' family ties to public safety officials have generated recommended, but not required, practices. See, e.g., *Commonwealth* v. *Robinson*, 24 Mass. App. Ct. 680, 684 (1987) ("the judge would have been prudent to have inquired more closely of all jurors who acknowledged having relatives engaged in law enforcement"). This approach reflects respect for the trial judge's discretion and responsibilities in juror selection while recognizing the value of, and encouraging, questioning sensitive to the possibility that bias may arise out of the family relationship. *Ibid.*

We likewise conclude in the instant case that the defendant failed to meet his burden of demonstrating a substantial risk of extraneous influence, and that the judge did not abuse her discretion where (1) she asked the potential jurors collectively whether they would treat the testimony of police officers differently from that of a civilian; (2) the two potential jurors at issue did not indicate that they would treat police officer testimony differently in response to collective questioning; and (3) the defendant has offered nothing more than the fact of the family relationships and speculation about the bias they may have engendered.[4]

We observe, however, that the judge would have been "prudent" to have conducted the follow-up questioning requested in this case, which involved shots being fired at a police officer who would be a key witness. *Commonwealth* v. *Robinson*, 24 Mass. App. Ct. at 684. See *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 364 (1991) ("appellate decisions

---

[4]We further note that the two potential jurors at issue were ultimately not seated as jurors. Compare *Commonwealth* v. *Robinson*, 24 Mass. App. Ct. at 684 (potential juror in question ultimately seated and "participated in final deliberations"). The other potential jurors who raised their hands in response to the judge's collective questioning regarding whether they would treat the testimony of police officers differently from that of a civilian were also not seated as jurors. Finally, the jury acquitted the defendant of the most serious crime, involving an armed assault with intent to murder, with the intended victim being the police officer. See generally *Commonwealth* v. *Rock*, 429 Mass. 609, 616 (1999); *Commonwealth* v. *Munafo*, 45 Mass. App. Ct. 597, 603 (1998).

have consistently encouraged trial judges to respond generously to motions that they question jurors individually about possible prejudice"). This follow-up could have been done efficiently at sidebar.[5] It could also have provided the judge with more information to guide the exercise of her discretion.

3. *Broadening the indictment for intimidation of a witness.* The defendant argues that he may have been convicted of a crime for which he was not indicted in violation of art. 12 of the Declaration of Rights of the Massachusetts Constitution. The defendant was indicted under G. L. c. 268, § 13B, in May, 1996, for willfully endeavoring "by intimidation, force and threats of force" to interfere with a witness, Williamson. In September, 1996, G. L. c. 268, § 13B, was amended. Among other things, the amendment inserted the phrase "express or implied" before the word "threats."[6] St. 1996, c. 393, § 2. The defendant argues that the judge added an additional theory of criminal liability when she charged the jury that the offense required interference through "express or implied threats of force." The defendant asserts, as he did at trial, that the judge should have strictly followed the language of the indictment and charged the jury that the second element of the offense was "threats of force," which, he claims, only applies to express threats.

We conclude that the judge's charge did not introduce a new theory of criminal liability to the jury. The word "threat," without modification, has been held to encompass implied as well as express threats in interpretations of other statutes containing the word. See, e.g., *Commonwealth* v. *Sholley*, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001) (jury permitted to conclude that fathers' rights advocate "threatened to commit a crime" pursuant to G. L. c. 275, § 2, when he said,

---

[5]Needless to say such questioning is best done in a manner that avoids the airing of personal views within earshot of the entire jury pool. See generally *Commonwealth* v. *Shelley*, 381 Mass. 340, 353-354 n.12 (1980) ("Collective questioning on sensitive issues may not elicit a response from some jurors who would respond in private"); *Commonwealth* v. *LaFaille*, 430 Mass. at 57-58 (Ireland, J., concurring) (observing that individual voir dire elicits biases jurors might not reveal when questioned in a group).

[6]Two other unrelated changes were made to G. L. c. 268, § 13B, in 1996. See St. 1996, c. 393, §§ 3, 4.

"Watch out, Counselor"); *Commonwealth* v. *Strahan*, 39 Mass. App. Ct. 928, 929-930 (1995) (evidence sufficient to prove threatening to commit a crime when defendant, a well-known crusader for whales, said he was "assessing the enemy" and "just looking for a place to put a hole in the boat"); *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 583 (1999) (defendant's statement, "Drop the charges," in conjunction with his accompanying actions and demeanor, sufficient to constitute threat of harm). See also *Commonwealth* v. *Sherry*, 386 Mass. 682, 696 (1982) (court interpreting the criminal statute dealing with rape, G. L. c. 265, § 22, construes the phrase "threat of bodily injury" to include threats that are either "inferred or expressed"); *Commonwealth* v. *Lopez*, 433 Mass. 722, 727 (2001).

The word "threat" has been defined in a variety of similar ways throughout case law. See *Planned Parenthood League* v. *Blake*, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994) (threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"); *Delaney* v. *Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989) ("acts or language by which another is placed in fear of injury or damage"). See also Black's Law Dictionary 1489 (7th ed. 1999) (defining threat as "a communicated intent to inflict harm or loss on another or on another person's property").

In analyzing whether a threat is made, we do not parse the words alone, *Commonwealth* v. *Sholley*, 432 Mass. at 725, nor do we draw distinctions between express and implied threats. Rather, we "consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances" to determine whether the statement was a threat. *Ibid.* Demeanor and tone play a part, as does the personal history of the speaker, the relationship of the parties, and the timing, subject matter, location, and other conditions of the exchange. We conclude that the statutory change was merely a clarification, reflecting the court's analysis of threats as contextual and not just a parsing of words.

In any event, there is no question that the threat was express in the instant case. At trial Williamson testified, and the jury could have found, that the defendant said, "We're going to take

care of this. I'm going to get you."[7] This is an express threat.
See, e.g., *Commonwealth* v. *Johnson*, 412 Mass. 318, 320 n.1
(1992) (where evidence of threats included phrase, "I'm going
to get you"). Indeed, the defendant's further statements to Will-
iamson to the effect that he knew where the officer lived and the
kind of car he drove by themselves left no doubt that the
defendant's purpose was to place Williamson in fear of injury
or damage if he did not "squash" the charges. See *Com-
monwealth* v. *Sholley*, 432 Mass. at 725-726; *Delaney* v. *Chief
of Police of Wareham*, 27 Mass. App. Ct. at 409. The judge's
jury charge did not broaden the indictment.

4. *Failure to allow cross-examination on police culture.* The
defendant argues that his constitutional rights to cross-examine
a witness were violated when the judge refused to allow him to
question a Boston police officer regarding the "fraternity, codes,
and culture of the Boston police." During the trial, at sidebar,
the defense attorney expressed his belief that Boston police of-
ficers operated under a "code of silence," which required that
they unquestioningly support each other's testimony. He stated
that he found Officer James Naughton's excellent memory
incredible given how long ago the incidents had occurred and
his recent review of Williamson's report of the incident. He
sought to ask Naughton questions regarding police culture.

The judge declined the request, noting that defense counsel
should ask Naughton for an explanation of his ability to
remember with such detail before pursuing a "code of silence"
line of questioning. If the witness could not furnish an explana-
tion, the judge said, she might allow defense counsel to inquire
further into the basis for the officer's memory. When further so
questioned, Naughton indicated that it was because of the "type
of situation" it was and that there were many police officers

---

[7]Officer Norita Landrum, the booking officer, testified at trial that the
defendant said, "I'll get him." Officer Eric Bradshaw testified that the
defendant made references to the car Williamson drove and the house Will-
iamson lived in. Any possible doubts are eliminated by the context in which
the remarks were made. At trial, Williamson testified that the defendant had
just been arrested and been part of a chase leading to shots being fired at
Williamson. He further testified that the defendant had become increasingly
agitated during the exchange at the police station.

present at the scene. After this explanation, the judge denied defense counsel's request to pursue his line of questioning regarding police culture.

The defendant correctly asserts that a criminal defendant has a constitutional right to cross-examine a witness to show bias. See *Davis* v. *Alaska*, 415 U.S. 308, 316-317 (1974); *Commonwealth* v. *Johnson*, 431 Mass. 535, 538 (2000). However, a judge also has broad discretion to control the scope and extent of cross-examination. *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995). A defendant must make a "plausible showing" to support his claim of bias. *Id.* at 401.

In the present case, the defendant did not make a plausible showing that the witness's testimony was influenced by a police "code of silence." Other than the defendant's own speculation, there was no support for the inquiry. Furthermore, the judge did not, as the defendant asserts, "bar all inquiry" into the area of possible bias, *Commonwealth* v. *Tam Bui*, 419 Mass. at 400, but remained open to the line of questioning until the witness offered a reason for his detailed memory. Considering that a police officer would likely remember a call regarding shots being fired at a fellow officer and that defense counsel presented no basis for his inquiry into police culture, the judge did not abuse her discretion by excluding such questions.

*Judgments affirmed.*