611 A.2d 659

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
KENNETH MABEN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 18, 1992—Decided August 3, 1992.

Before Judges R.S. COHEN, ARNOLD M. STEIN and
KESTIN.

*Robert L. Sloan,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney; *Robert L. Sloan,* of counsel and on the brief and supplemental letter brief).

*James E. Jones, Jr.,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney; *James E. Jones,* of counsel and on the letter brief and supplemental letter brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

Defendant was found guilty of first degree aggravated assault, *N.J.S.A.* 2C:14–2a(1); second degree sexual assault, *N.J.S.A.* 2C:14–2b; and third degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4a. The trial judge sentenced him to a twelve-year prison term for the aggravated assault and concurrent terms of six and four years for the other offenses.

The trial was brief. Three witnesses testified, a child, a social worker and a state trooper. The child and the adult testified as to hearsay statements reported to them by J.G., six years old when the events were reported to have occurred. The trooper read defendant's written confession to the jury.

G.H., age thirteen at the time of trial, testified that about two years before her court appearance J.G. had told her that in one afternoon she performed two acts of fellatio upon "Kenny," a baby-sitter.

G.H.'s father reported the incident to the state police and to the girl's mother, who immediately contacted Teresa Rudd, a social worker with the New Jersey Division of Youth and Family Services.

Rudd testified that she interviewed J.G. who told her about the two acts of fellatio performed upon Kenny. She also told Rudd that Kenny had twice touched her vagina and said that Kenny had attempted to put his penis in her vagina on two

occasions but that it would not fit. She later told Rudd that Kenny had ejaculated during fellatio.

We have not repeated the exact words attributed to J.G. in describing sexual organs and sexual acts. A more graphic account is not necessary for disposition of this appeal.

Trooper Maruca of the New Jersey State Police read defendant's signed confession to the jury. The voluntariness of the confession is not in dispute. Defendant admitted to misconduct with J.G. when he was baby-sitting for her and her siblings at their family's trailer. He had been drinking. He admitted that J.G. performed two acts of fellatio upon him and that he ejaculated on the first occasion. He also stated that he put his hands into her pants and on her vagina but denied attempting to penetrate her vagina.

Defendant's confession alone could not support his conviction. Without the hearsay statements of the child, the proofs could not withstand a verdict of judgment of acquittal under *R.* 3:18–1. Aside from these statements there was no legal evidence independent of the confession to support the *corpus delicti:* the loss, harm or injury, including some criminal culpability, that would tend to reinforce the trustworthiness of the confession. *State v. Di Frisco,* 118 *N.J.* 253, 269, 571 *A.*2d 914 (1990); *State v. Lucas,* 30 *N.J.* 37, 56, 152 *A.*2d 50 (1959).

The trial judge admitted the child's out-of-court statement under the authority of *Evid.R.* 63(33) which under certain conditions permits introduction of a hearsay statement made by a child who is an asserted victim of sexual abuse. The statement is admissible if the court finds that it is probably trustworthy and either the witness testified at trial or where the child is unavailable as a witness and there is independent admissible evidence corroborating the act of sexual abuse. *Evid.R.* 63(33)(b) and (c)(i) and (ii). *State v. Roman,* 248 *N.J.Super.* 144, 147, 590 *A.*2d 686 (App.Div.1991). *Evid.R.* 62(6)(d) states that a witness is unavailable "where the propo-

nent of the statement is unable, *despite due diligence*, to procure the attendance of the witness." (emphasis added).

In mid-February 1990 the trial judge determined in a pretrial hearing that the child's hearsay statements could be admitted at trial notwithstanding her absence because they were probably trustworthy and she was unavailable to testify. Even though the trial did not commence until one month later, there was no evidence that the prosecutor resumed searching for the child. Nor is there any indication that the judge instructed the prosecutor to resume the search.

The prosecutor did not document the State's efforts to locate J.G. She simply gave a narrative account to the judge of the State's efforts. This is her report of the "due diligence" used by the State in its search for J.G.:

MS. GARRETT: Judge, what we did in this case is we had the original address of the victim which is in Cookstown or Wrightstown. I think it's ... some number on ... Street. What we did is we sent a letter to that last address that we had. Okay. However, that—she no longer lived there. Then we got some indication that she may live at ... Wrightstown.[1] We sent a letter to that address, and it was checked off "Attempted—Not Known." Okay. And that the person was not there.

Then my investigator contacted the Welfare Board as we had some indication that the victim's mother was receiving assistance. Our sources at the Welfare Board gave an address in Houston. This was not an address that was provided to us from the victim as a forwarding address. This is what we found out through our investigation, Judge. And this was an address of 1520 Silver Street from Houston, Texas.

We sent a teletype to that—to the Houston Police Department asking them to attempt to locate—and it says, "Police attempts to locate Susan G ... at 1520 Silver street, Houston, Texas, and request her to call Investigator Bell with reference to her testifying at trial. Thank you in advance for your assistance in this matter."

We then received a teletype back from the Houston Police Department to our Prosecutor's Office in reference to locating missing witness Susan G ... at 1520 Silver Street, and their reply was, "Please be advised that we have a street name Silber, S-i-l-b-e-r, and both street addresses were checked—that being Silver, S-i-l-v-e-r, and Silber, S-i-l-b-e-r, Street 1520 with no luck. Both locations were business/warehouses and not residences." That's the indication that we had, Judge.

---

[1]Street address omitted.

Being that we had no other way to—I mean, right there the trail ended. Once there was no—the address that the victim's mother had given the Welfare Board as a forwarding address was not a good address. We did not know how else to proceed in this matter. In other words, the trail just ended there, Judge.

There is not a shred of documentation to support these representations. The trial judge did not know where the prosecutor got this information or whether it was at all reliable. Nor do we.

The judge ruled that the child was unavailable as a witness. He called this a "close case," but that the prosecutor "squeaked by" by having the Texas authorities attempt to locate J.G.'s family in Houston.

■ This was not a close case. Proof of due diligence in the search for J.G. was woefully deficient. It is no better than the proof in *State v. Hamilton*, 217 *N.J.Super.* 51, 524 *A.*2d 1281 (App.Div.), *certif. denied*, 108 *N.J.* 581, 531 *A.*2d 1355 (1987). There we held that it was improper for the State to read the prior transcript testimony of a witness who had previously testified at defendant's earlier trial. We concluded that the State's efforts to locate the missing witnesses were insufficient. We noted among other things that the State failed to attempt to locate the witness through school authorities (not done in either New Jersey or Texas in this case), and that the State's investigator never visited Virginia, the last known location of the missing witness. *Id.* at 55, 524 *A.*2d 1281.

The need for due diligence in the search for the missing witness was even more compelling in this case than it was in *Hamilton*. There, the jury at least had the benefit of hearing the absent witness's prior direct testimony and cross-examination. If our courts allow the skimpy proofs in this case to pass muster as a diligent search for a missing witness, we see no reason why any prosecutor would venture beyond the boundaries of this limited inquiry. It is obviously advantageous to have the "unavailable" child's declarations provided unvarnished to a jury, free of the potential perils of cross-examination.

It is also inconceivable to us that in this age of computers, the prosecution could not obtain more information as to the whereabouts of a misplaced person from the numerous sources of electronically-stored data available to law enforcement personnel. At a minimum, we would expect the State to seek out a missing potential child witness with as much zeal as would be required to find a witness whose testimony was needed at trial.

A child had better be truly unavailable before his or her untested hearsay statements are presented to a jury in a sex offense case pursuant to *Evid.R.* 63(33). Any less stringent standard of due diligence comes perilously close to a violation of defendant's constitutional rights under the confrontation clause. *U.S. Const.* amend. VI, *N.J. Const. of 1947* art. I, para. 10. *State v. Roman, supra,* 248 *N.J.Super.* at 144, 590 *A.*2d 686. J.G. was not unavailable within the meaning of *Evid.R.* 62(7) and 63(33). There was no good faith effort made to obtain her presence at trial. *Barber v. Page,* 390 *U.S.* 719, 724–25, 88 *S.Ct.* 1318, 1321–22, 20 *L.Ed.*2d 255, 260 (1968); *State v. Hamilton, supra,* 217 *N.J.Super.* at 52, 524 *A.*2d 1281.

On retrial the judge should conduct a more thorough *voir dire.* The only general questions asked were whether any panel members: had previously participated in a criminal trial as a juror or witness, been the victim of a crime, knew the facts of this case or anyone connected with the case, had any children, and would be so upset by details of sexual abuse that he or she would be unable to serve as a juror. The *voir dire* should cover areas essential to a proper examination of jurors in a criminal case, in an effort directed towards securing a fair and impartial jury. *State v. Lumumba,* 253 *N.J.Super.* 375, 391–93, 601 *A.*2d 1178 (App.Div.1992); *State v. Oates,* 246 *N.J.Super.* 261, 266–68, 587 *A.*2d 298 (App.Div.1991).

Reversed and remanded for a new trial.