775 A.2d 686

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. T.E., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 21, 2001—Decided July 3, 2001.

18

Before Judges HAVEY, WEFING and LISA.

*Peter A. Garcia,* Acting Public Defender, attorney for appellant, (*Michael C. Kazer,* Designated Counsel, on the brief).

*John J. Farmer, Jr.,* Attorney General, attorney for respondent, (*Deborah Bartolomey,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

In this case we consider whether it is permissible for an adult support person to sit in close proximity to a young sexual abuse

victim while testifying before a jury. We conclude such a procedure is permissible upon a showing of substantial need, with appropriate safeguards imposed, and with a cautionary instruction given.

Tried to a jury, defendant was convicted of the following offenses committed against his four-year-old daughter, B.E.: first-degree aggravated sexual assault by vaginal penetration in violation of *N.J.S.A.* 2C:14–2a(1) (count one), first-degree aggravated sexual assault by anal penetration in violation of *N.J.S.A.* 2C:14–2a(1) (count two), second-degree sexual assault in violation of *N.J.S.A.* 2C:14–2b (count three), and second-degree endangering the welfare of a child in violation of *N.J.S.A.* 2C:24–4 (count four). He was sentenced on counts one and two to concurrent terms of imprisonment of eighteen years with a nine year parole disqualifier. On count three, he was sentenced to nine years imprisonment with a four-and-one-half year parole disqualifier, concurrent to counts one and two. On count four, he was sentenced to seven years imprisonment, consecutive to counts one, two and three. Therefore, his aggregate sentence was twenty-five years imprisonment with a nine year parole disqualifier. Appropriate monetary sanctions were imposed, and defendant was specially sentenced to community supervision for life.

On appeal, defendant raises the following arguments:

POINT I

THE TRIAL COURT COMMITTED PLAIN ERROR AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY PERMITTING THE TRIAL PROSECUTOR TO ADMINISTER TO HIS WITNESS AN OATH TO TELL THE TRUTH (NOT RAISED BELOW)

POINT II

THE PROSECUTOR'S USE OF B.E. DURING THE TRIAL PROVOKED SUCH UNDUE SYMPATHY FOR HER AND SUCH ANTIPATHY FOR THE DEFENDANT THAT THE TRUTH FINDING FUNCTION OF THE JURY WAS DISTORTED (RAISED IN PART BELOW)

## POINT III

THE COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY PERMITTING MS. PATEL TO SIT NEXT TO B.E. DURING HER IN-COURT TESTIMONY

## POINT IV

THE COURT ERRED IN ADMITTING B.E.'S "TENDER YEARS" HEARSAY STATEMENT MADE TO INVESTIGATOR GREGORY BECAUSE THE IN-VESTIGATIVE TECHNIQUES EMPLOYED RENDERED THE STATEMENT UNRELIABLE

## POINT V

DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CON-CLUSION OF THE STATE'S CASE ON THE CHARGE OF AGGRAVATED SEXUAL ASSAULT UPON B.E. BY ANAL PENETRATION ON COUNT TWO SHOULD HAVE BEEN GRANTED

## POINT VI

THE IMPOSITION OF AN AGGREGATE SENTENCE OF TWENTY-FIVE (25) YEARS WITH NINE (9) YEARS OF PAROLE INELIGIBILITY WAS EXCESSIVE AND WAS AN ABUSE OF THE COURT'S DISCRETION

### (A)

THE COURT ABUSED ITS DISCRETION BY IMPOSING SENTENCES ON DEFENDANT'S CONVICTIONS FOR AGGRAVATED SEXUAL ASSAULT (COUNTS ONE AND TWO) AND SEXUAL ASSAULT (COUNT THREE) THAT WERE IN EXCESS OF THE PRESUMPTIVE SENTENCES

### (B)

DEFENDANT'S CONVICTION FOR SEXUAL ASSAULT (COUNT THREE) SHOULD HAVE BEEN MERGED INTO DEFENDANT'S CONVICTIONS FOR AGGRAVATED SEXUAL ASSAULT (COUNTS ONE AND TWO)

### (C)

IMPOSING NINE (9) YEARS OF PAROLE INELIGIBILITY ON DEFEN-DANT'S CONVICTION FOR AGGRAVATED SEXUAL ASSAULT WAS EX-CESSIVE AND AN ABUSE OF THE COURT'S DISCRETION

### (D)

THE COURT ABUSED ITS DISCRETION BY RUNNING THE SEN-TENCE IMPOSED ON DEFENDANT'S CONVICTION FOR ENDANGERING

(COUNT FOUR) CONSECUTIVE TO DEFENDANT'S CONVICTIONS FOR AGGRAVATED SEXUAL ASSAULT (COUNTS ONE AND TWO)

On Point VI(B), the State concedes, and we agree, that the sexual assault conviction (count three) should merge with the aggravated sexual assault convictions (counts one and two). *See N.J.S.A.* 2C:1–8a(1) and d(1). We reject defendant's remaining arguments, and accordingly affirm his convictions and the sentences imposed on counts one, two and four, and remand to enter an amended Judgment of Conviction vacating the sentence on count three.

At the time of these crimes, which occurred between October 1997 and April 1998, defendant lived in a household with his wife, A.E., their daughter, B.E., their newborn son, I.E., and two foster children, both boys then two-years-old and less than one-year-old. A.E. also had a thirteen-year-old son from a prior relationship, who did not live in the household at the time of these events.[1]

On the morning of April 10, 1998, A.E. fed the foster children, put them back to bed, and put a load of laundry into the washer, including defendant's work uniform which he would need to wear that afternoon. A.E. left the home to run some errands. Defendant, who worked midnight shifts as a security guard, had returned from work and was home with the children when A.E. left. When she left, B.E. and I.E. were sleeping in their parents' bed. I.E. regularly slept there, and B.E. often slept there when defendant was at work.

When A.E. returned home several hours later, she noticed that her children were still in her bed, but were positioned differently, and the sheets, mattress cover and comforter had been removed from the bed. Defendant was asleep on the bed with the children. She discovered the bed linens in the dryer and defendant's work uniform in the living room.

---

[1] Under a separate indictment, No. 98–09–03967, defendant was charged with aggravated sexual assault, terroristic threats and endangering with respect to A.E.'s son. That indictment was consolidated for trial with the indictment that is the subject of this appeal. The jury acquitted defendant on all counts of Indictment No. 98–09–03967.

A.E. woke up B.E. and offered her breakfast, but B.E. complained that her stomach hurt and she wanted only juice. She was unusually thirsty. B.E. went to her room to lie down, and used the ladder to climb into her bed, which was not her usual procedure. She stayed there until defendant left for work.

Defendant and A.E. were members of the Muslim faith. Before leaving for work, defendant insisted that he must take a bath in order to make salaat, a prayer. Before making salaat, a Muslim must be in a state of purity, and a bath, or ghusl, is needed if one is unclean from sexual activity. A.E. inquired why he would need a bath since he had been sleeping; she asked if he had been masturbating, to which he simply replied, "I need to take a bath so I can make salaat."

After defendant left the home, B.E. came out of her room and went to the bathroom. While B.E. was urinating, A.E. could hear her moaning. When B.E. came out of the bathroom, she was limping. In response to her mother's inquiry of what was the matter, B.E. stated, "My daddy hurt me again." When asked what he did, B.E. said, "He hurt my vagina with his penis," after which "white stuff came out." B.E. further stated that defendant then gave her a bath.

A.E. placed B.E. with a friend, to get her out of the home. She and the friend observed that B.E.'s vagina appeared red. B.E. told the friend that her father touched her with his penis.

A.E. first sought assistance from the Muslim community. When that proved unavailing, she contacted the Division of Youth and Family Services (D.Y.F.S.) on April 15, 1998. She then took all of the children and met with police and D.Y.F.S. representatives that evening at the hospital. D.Y.F.S. social worker Sandy Gregory interviewed B.E. outside the presence of her mother. B.E. related to Gregory the events of April 10, 1998, specifically stating that defendant put his penis in her vagina, and also that this had occurred on several other occasions. B.E. informed an examining physician that night that her vagina hurt because her father had put his penis in it and that it had happened five times

before. The physical examination revealed a vaginal discharge and superficial lacerations of the vagina.

Sometime after the hospital visit, while in a supermarket, B.E. spontaneously exclaimed to her mother, "Mommy, mommy, my vagina—my bootie doesn't hurt me no more. Daddy is not hurting me no more." A.E. explained that she taught her daughter to use the term "booty" to mean rectum. When A.E. asked B.E. what she meant by this statement, B.E. responded that while A.E. was in the hospital giving birth to her younger brother, I.E., "Daddy hurt her vagina, and he put his penis in her bootie, and booboo had come out and she got away from him and she ran outside the door down the street, and he came and got her and beat her." I.E. was born prematurely, on October 19, 1997, and A.E. was hospitalized four or five days.

B.E. was examined by a physician on May 20, 1998 at the Essex County Abuse Diagnostic and Treatment Center. Vaginal examination revealed her hymen to be about twice the normal size for a child of her age and with a rolled edge and a small notch. This led the doctor to conclude "that the genital findings strongly suggest a disturbance of the hymenal anatomy by repeated penetration." Rectal examination was normal.

Defendant testified at trial, denying any sexual contact with B.E. He stated that he had laundered the bed linens on April 10, 1998 because B.E. had wet the bed. He stated that he took a bath to be clean and pure for prayer because he did a lot of sweating at his job the night before.

I

We first consider defendant's contention that the trial judge erred by permitting the prosecutor to administer an oath to B.E. Judge Goldman conducted a hearing pursuant to *N.J.R.E.* 104(a), and determined that B.E. was competent to testify. *See N.J.R.E.* 601. During the hearing, the prosecutor conducted most of the questioning, and it was revealed that B.E. knew him and had met with him on a number of previous occasions. At the

conclusion of the hearing, defendant did not dispute B.E.'s competency to testify, nor does he on appeal.

In apparent recognition of the familiarity and rapport between B.E. and the prosecutor, the judge suggested the prosecutor administer the oath in the presence of the jury. The prosecutor agreed, and defense counsel stated that he had no objection. In the presence of the jury, with B.E. on the witness stand, the judge stated to the prosecutor, "I'm going to allow you, rather than have the sheriff's officer swear the witness in." The prosecutor then asked a series of questions establishing that B.E. knew the difference between telling the truth and lies, that she agreed to answer truthfully questions asked by both attorneys and the judge, and that she understood the consequence of lying is punishment. Defense counsel declined the opportunity to question B.E. on this subject, and the judge declared "that suffices for the equivalent of the oath that would otherwise be given."

N.J.R.E. 603 requires that witnesses be sworn or affirmed, but "[n]either that rule nor any other specifies any particular form to which an oath must adhere." *State v. Caraballo*, 330 *N.J.Super.* 545, 554, 750 *A.*2d 177 (App.Div.2000). The rule was intended to validate any oath ceremony acceptable at common law. *Id.* (citing *State In Interest of R.R.*, 79 *N.J.* 97, 108, 398 *A.*2d 76 (1979)). Any ceremony that invokes the commitment to speak the truth on pain of future punishment is an acceptable common law oath. *R.R., supra*, 79 *N.J.* at 111, 398 *A.*2d 76. Further, a trial judge is vested with the discretion to tailor the oath to accommodate a child-witness. *Ibid.*

Defendant admits that no specific oath ceremony is needed, but argues that he was deprived of a fair trial "because it was the person of the trial prosecutor that was the judicial entity who undertook the responsibility of assuring compliance with *Rule* 603." He argues this procedure communicated to the jury that this witness and all of the State's witnesses would be truthful. We disagree.

This issue has been addressed in other jurisdictions. It has been held that where a party calling a witness administers the oath, he or she does so on behalf of the court. *Smoak v. State,* 58 *Ga.App.* 299, 198 *S.E.* 99, 100 (1938). Stated otherwise:

> The inference is and the presumption would be, that the oath was administered in the presence of and at the direction of the court. This would amount to the administering of the oath by the court. 'The competency of the person who reads the words of the oath to the witness and does the ministerial part of its administration is immaterial.'

> [*Taylor v. State,* 59 *Ga.App.* 1, 200 *S.E.* 237, 240 (1938) (citation omitted).]

The practice of having a prosecutor administer the oath to infants, particularly in sensitive cases involving a child alleged to have been a victim of sexual abuse is particularly appropriate. In *State v. Mader,* 113 *Idaho* 409, 744 *P.*2d 137 (1987), the court determined that a prosecutor's "qualifying questions regarding [a five year-old sexual assault victim's] ability to discern the difference between truth and falsity," concomitant with the trial court's questioning, constituted an effective administration of oath. *Id.* at 137–38. Significantly, the court observed that "the lack of a formal oath did not destroy the fairness of the trial." *Id.* at 138. Similarly, in *Gonzales v. State,* 748 *S.W.*2d 510 (Tex.App.1988), the court determined that "the questions asked by both the judge and the prosecutor were sufficient to 'impress' [a nine and an eleven-year-old victim of sexual abuse] with their duty to be truthful, and the minors' answers to the questions were the equivalent of an oath by affirmation." *Id.* at 512.

B.E.'s testimony continued on a second day. When she then resumed the witness stand, the judge briefly reminded her of her continuing obligation to tell the truth and that she would be subject to punishment if she did not. We reject defendant's argument that this constituted an acknowledgment by the judge of the impropriety of the previous day's procedure. We view it as an acknowledgment that B.E. was now more accustomed to the courtroom setting and therefore would be more receptive to direct communication by the judge.

■ The preferred procedure is for a court officer to administer a "traditional" oath and for the judge to engage in colloquy constituting its functional equivalent with a youthful witness. However, in the circumstances presented here we find no abuse of discretion in allowing the prosecutor to conduct the examination required to satisfy the oath requirement of *N.J.R.E.* 603.[2]

## II

■ Defendant argues it was error to permit B.E. to be called as a witness and give live testimony in front of the jury. She was reluctant in her responses, according to defendant, thereby limiting the probative value of her testimony. Defendant charges the prosecutor used her as a "trial tool" to evoke sympathy, which deprived him of a fair trial. Defendant contends the State could have presented its case without B.E.'s testimony, utilizing other available evidence, including B.E.'s out-of-court statements which would have been admissible under the tender years exception, *N.J.R.E.* 803(c)(27), even if she did not testify. We cannot agree with these contentions.

While B.E. was very hesitant and reluctant to recount these events, she did provide significant testimony, including that defendant removed his and her clothing and sat on her and did things she did not like, more than once, while in her parents' bed; that defendant hurt her booty with his hands; that she bled; that defendant had a gun that he kept in a particular drawer; and that defendant said he would kill her and her mother and the other children if she told her mother. This was significant testimony that the State was entitled to present. In cases such as this "testimony by the victim is often the indispensable element of the prosecutor's case." *State v. D.R.*, 109 *N.J.* 348, 358, 537 *A.2d* 667 (1988). Defendant argues, however, that the prosecutor did not

---

[2] Defendant's argument that this procedure would communicate to the jurors that all of the State's witnesses would be truthful is belied by the acquittal on all charges under Indictment No. 98–09–003967.

need B.E.'s trial testimony because he could have proffered B.E.'s statements to Sandy Gregory by the latter's testimony. Defendant bases this argument on the supposition that if the prosecutor had requested, the trial court would have found B.E. to be "unavailable," the alternative requirement to trial testimony in *N.J.R.E.* 803(c)(27)(c)(ii). We reject defendant's position.

In *State v. Maben,* 259 *N.J.Super.* 93, 611 *A.*2d 659 (App.Div. 1992), *aff'd,* 132 *N.J.* 487, 626 *A.*2d 63 (1993), we admonished that "[a] child better be truly unavailable before his or her untested hearsay statements are presented to a jury in a sex case." *See also D.R., supra,* 109 *N.J.* at 371, 537 *A.*2d 667. Moreover, at trial, defendant responded to the State's successful motion to allow B.E. to testify via closed-circuit television by insisting that she testify instead in front of the jury, waiving his presence in the courtroom. *See State v. Crandall,* 120 *N.J.* 649, 658–59, 577 *A.*2d 483 (1990); *State v. Delgado,* 327 *N.J.Super.* 137, 144, 742 *A.*2d 990 (App.Div.2000). We view defendant's belated assertion of this issue with considerable skepticism since it was he, not the prosecutor, who prevented B.E. from the less traumatic alternative of closed-circuit television, and since defendant objected at trial to the admissibility of the statement to Sandy Gregory on the grounds that it was unreliable, even when B.E. did testify, and now makes the same argument on appeal.

### III

Defendant next argues that it was error to allow a support person to sit next to B.E. as she testified before the jury. Sitting alone in the witness stand, B.E. was initially non-responsive to the prosecutor's questions. The court took a recess, after which the non-responsiveness continued. The court took another recess, during which the prosecutor suggested that B.E.'s therapist, Reshma Patel, who accompanied B.E. to the courthouse and was in the courtroom, be permitted to sit next to B.E. while she testified. The judge engaged in colloquy with both counsel and Ms. Patel and concluded that this procedure might ameliorate

B.E.'s apprehension. Defense counsel objected, arguing this procedure would convey to the jury that B.E. needed assistance and support, and would arouse undue sympathy with the jury. The judge overruled the objection and gave the following cautionary instruction, omitting any reference to Ms. Patel's occupation or relationship to B.E. at the request of defense counsel:

All right, ladies and gentlemen of the jury, we have Reshma Patel sitting with [B.E.] here. Please do not consider the fact that Ms. Patel is sitting with [B.E.] in any way, shape, manner or form in your determination determining credibility or any other determination in this matter.

The judge instructed Ms. Patel not to communicate with B.E. in any way, tell her what to say, give signals, make expressions, or in any way indicate approval or disapproval of B.E.'s answers. There is nothing in the record to indicate that these instructions were not followed.

Judge Goldman expressed his reasons for permitting this procedure. Upon observing B.E.'s demeanor in the courtroom and her extreme reluctance to answer questions about the sexual abuse inflicted on her, he found:

I am satisfied under the circumstances that based upon the age of the witness, the nature of the testimony, I have clear evidence of fear and embarrassment on the part of the witness, I have clear demonstration of her inability to testify under the circumstances, there is a high degree of trauma experienced by the witness, and the event she is being called upon to testify.

In his final charge, the judge instructed the jury:

You must not allow any bias, passion, prejudice, sympathy or pity to interfere with your verdict. I know how difficult this may be given the emotional nature of the charges here, and the appearance of [B.E.] before you. The potential emotional impact of the evidence is all the more reason that you as jurors must make special effort to avoid any influence caused by these emotions.

It is vitally important to remember that any influence caused by these emotions has the potential to deprive both the State and the defendant of what you promised them, a fair and impartial trial by fair and impartial jurors.

A trial judge is responsible for the control and management of the trial and is vested with wide discretion to perform this function. *State v. Castoran,* 325 *N.J.Super.* 280, 285, 739 *A.*2d 97 (App.Div.1999), *certif. denied,* 163 *N.J.* 78, 747 *A.*2d 286 (2000). "The court shall exercise reasonable control over the mode ... of

interrogating witnesses ... so as to ... make the interrogation ... effective for ascertainment of the truth, and ... protect witnesses from harassment or undue embarrassment." *N.J.R.E.* 611(a). The protection of children from undue trauma when testifying is an important public policy goal. *State v. Smith,* 158 *N.J.* 376, 385, 730 *A.*2d 311 (1999). The Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38, entitles victims "to be treated with dignity and compassion by the criminal justice system." *N.J.S.A.* 52:4B–36a. Our courts have recognized the need to relax general rules in the interest of enabling testimony by youthful witnesses by allowing substantial leeway in the use of leading questions. *R.R., supra,* 79 *N.J.* at 114–15, 398 *A.*2d 76; *State in the Interest of B.G.,* 289 *N.J.Super.* 361, 370–71, 674 *A.*2d 178 (App.Div.) *certif. denied,* 145 *N.J.* 374, 678 *A.*2d 714 (1996).

The issue concerning allowance of a support person to accompany a reluctant child-witness while testifying before a jury has not been previously addressed in New Jersey. The overwhelming majority of jurisdictions which have considered this issue have sanctioned the practice in appropriate circumstances. *See Williamson v. State,* 234 *Ga.App.* 658, 507 *S.E.*2d 765 (1998) (not abuse of discretion to allow grandmother of nine-year-old child molestation victim to stand behind child while she testified); *Murchison v. State,* 231 *Ga.App.* 769, 500 *S.E.*2d 651, 652 (1998) (allowing seven-year-old sexual assault victim to sit on her mother's lap while testifying was an appropriate exercise of discretion to "render aid to a witness if, because of age, timidity or frailty, the witness requires aid in order to testify."); *State v. Reeves,* 337 *N.C.* 700, 448 *S.E.*2d 802 (1994), *cert. denied,* 514 *U.S.* 1114, 115 *S.Ct.* 1971, 131 *L.Ed.*2d 860 (1995) (no error for five-year-old daughter of murder victim to testify from her stepmother's lap during capital penalty trial); *Hall v. State,* 634 *N.E.*2d 837 (Ind. Ct.App.1994) (surrogate guardian appropriately permitted to sit with mentally handicapped eight-year-old while she testified); *Gadberry v. State,* 46 *Ark.App.* 121, 877 *S.W.*2d 941 (1994)(no prejudice in allowing social worker to stand next to seven-year-old child sexual abuse victim while she testified); *State v. Rowray,* 18

*Kan.App.*2d 772, 860 *P.*2d 40 (1993) (allowing mother to sit in close proximity to her eight-year-old and six-year-old children while they testified against their assailant charged with sexual offenses was not inherently prejudicial); *State v. Menzies,* 26 *Conn.App.* 674, 603 *A.*2d 419 (1992)(guardian ad litem permitted to sit by child sexual abuse victim after a showing of a compelling need for such a procedure); *Duncan v. State,* 583 *So.*2d 439 (Fla.Dist.Ct. App.1991)(no error to allow guardian ad litem to sit by child sexual abuse victim during her testimony); *State v. Hoyt,* 806 *P.*2d 204 (Utah Ct.App.1991)(no abuse of discretion to allow victim-support-representative to sit near child sexual abuse victim as she testified); *(Commonwealth v. Pankraz,* 382 *Pa.Super.* 116, 554 *A.*2d 974 (1989), *appeal denied* 522 *Pa.* 618, 563 *A.*2d 887 (1989) (no abuse of discretion to allow four-year-old sexual assault victim to sit in grandmother's lap while testifying); *State v. Dompier,* 94 *Or.App.* 258, 764 *P.*2d 979 (1988), *review denied,* 307 *Or.* 514, 770 *P.*2d 595 (1989) (permissible for five-year-old sexual abuse victim to sit on foster mother's lap during testimony); *Stanger v. State,* 545 *N.E.*2d 1105 (Ind.Ct.App.1989), *overruled o.g., Smith v. State* 689 *N.E.*2d 1238 (Ind.1997)(appropriate to allow support person sit two or three feet behind child witnesses); *State v. Brockenborough,* 45 *N.C.App.* 121, 262 *S.E.*2d 330 (1987)(no prejudice in allowing six-year-old sexual abuse victim to sit in foster mother's lap despite the fact that she testified at an earlier hearing with no assistance); *Soap v. State,* 562 *P.*2d 889 (Okla.Crim.App.1977)(no abuse of discretion to allow the mother of a seven-year-old sodomy victim to stand by and hold victim's hand while she testified); *State v. Johnson,* 38 *Ohio App.*3d 152, 528 *N.E.*2d 567 (1976) (no abuse of discretion or constitutional violation to allow eight-year-old sexual abuse victim to sit on aunt's lap while testifying).

We are cognizant of the holdings in *State v. Rulona,* 71 *Haw.* 127, 785 *P.*2d 615 (1990)(abuse of discretion to allow eight-year-old sexual abuse victim sit on his counselor's lap while testifying because no demonstration of compelling necessity), and *State v. Suka,* 70 *Haw.* 472, 777 *P.*2d 240 (1989)(abuse of discretion to allow counselor of fifteen-year-old sexual abuse victim to sit next

to and place her hands on the victim's shoulders while she testified). Although these Hawaii cases deem this practice unduly prejudicial, they are "contrary to the great majority of the reported decisions throughout the United States," and other jurisdictions "do not find the authority of these two cases to be compelling." *State v. Rowray, supra,* 860 *P.*2d at 43.

Further, a number of jurisdictions have codified this practice. For instance, 18 *U.S.C.A.* § 3509(i) provides:

> A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child. The court, at its discretion, may allow the adult attendant to remain in close proximity to or in contact with the child while the child testifies. The court may allow the adult attendant to hold the child's hand or allow the child to sit on the adult attendant's lap throughout the course of the proceeding. An adult attendant shall not provide the child with an answer to any question directed to the child during the course of the child's testimony or otherwise prompt the child. The image of the child attendant, for the time the child is testifying or being deposed, shall be recorded on videotape.

Similarly, *Idaho Code* § 19–3023 provides:

> When a child is summoned as a witness in any hearing in any criminal matter ... notwithstanding any other statutory provision, parents, a counselor, friend or other person having a supportive relationship with the child shall be allowed to remain in the courtroom at the witness stand with the child during the child's testimony unless in written findings made and entered, the court finds that the defendant's constitutional right to a fair trial will be unduly prejudiced.

Additionally, *Mich. Stat. Ann.* § 600.2163a(4) provides that "[a] witness who is called to testify shall be permitted to have a support person sit with, accompany, or be in close proximity to the witness during his or her testimony." North Dakota and California have also codified such a practice. *See N.D. Cent.Code* § 12,1–35–05.1 (assistance during proceedings); *Cal.Penal Code* § 868.5 (supporting person during testimony of prosecuting witness).

Our review of the opinions addressing this issue reveals that objection to this procedure is typically based upon potential prejudice to the defendant because of increased sympathy for the child-witness or the appearance of enhancing the credibility of the child-witness. A balancing process is required to minimize such potential prejudice to defendant while advancing the interest of the

State in presenting the testimony of critical witnesses. There is also a public interest that testimony be presented in a manner likely to result in ascertainment of the truth. *N.J.R.E.* 611(a)(1). Measures designed to put at ease a reluctant child-witness, traumatized by the underlying event and further traumatized when called upon to recount that event in the courtroom, serve this purpose.

Adopting the common thread in the majority opinions, we hold that upon a showing of substantial need, with appropriate safeguards imposed, and a cautionary instruction given, a trial judge's discretion is not abused in permitting an adult support person to sit in close proximity to a young child while testifying before a jury. The safeguards must assure that the support person does not speak, prompt the witness or attempt to disrupt or influence the trial.

Factors to guide the trial judge's discretion in determining whether to permit this procedure, and, if so, its implementation, should include the following:

(1) A preliminary showing must be made to establish a substantial need for the procedure. It must be demonstrated that without accompaniment, the child is likely to be substantially non-responsive, and that with accompaniment, the child is likely to provide meaningful, probative testimony. The court may consider the age of the witness, the nature of the testimony, evidence of fear, embarrassment or inability to testify, and the degree of trauma experienced by the witness in the underlying event and by the courtroom experience.

(2) A defendant should be given the opportunity to suggest alternatives, such as a recess to enable the witness to regain composure or testimony by closed-circuit television.

(3) Choice of the support person should minimize potential prejudice. A parent or other close relative will more likely be viewed as family support than vouching for the witness' credibility, as might result with a counselor, therapist or other profes-

sional. The advisability of identifying the status of a non-family support person should be considered. Whether the support person is also a witness in the trial should be considered; for example this might impact a sequestration order, and, depending upon the scope and extent of the support person's testimony it might tend to unduly bolster the child's testimony. A representative of the prosecutor's office should not be used.

(4) The logistics should be only as intrusive as necessary to accomplish the purpose of the procedure. Placing the support person in the front row of the gallery or at counsel table, for example, would be minimally intrusive. Permitting the support person to stand behind or sit alongside the witness is moderately intrusive. Contact, such as holding the child's hand or permitting the child to sit on the support person's lap is highly intrusive and should be considered only as a last resort. The view of the child by the defendant and the jury should not be obstructed.

(5) A cautionary instruction should be given to the support person not to speak, prompt, communicate by signals or expression, and to give no indication of approval or disapproval of the answers.

(6) An appropriate instruction should advise the jurors that the purpose of the support person is to attempt to place the child at ease while testifying and that the presence of the support person should not affect their assessment of the credibility of the child's testimony. The standard "passion, prejudice or sympathy" charge should also be given.

We are satisfied that in the circumstances of this case there was no abuse of discretion in permitting Ms. Patel to sit next to B.E. during her testimony, and that adequate safeguards were employed to protect defendant's right to a fair trial. Defendant has demonstrated no actual prejudice. An unsupported claim of prejudice is insufficient. As observed by the Court of Appeals of Ohio, "The perceived need of the witness to sit on the

lap of her aunt, her reluctance to answer direct questions, the need for leading questions ... and the demeanor of the infant-witness, all could be construed by the jury as diminishing, rather than extending, the credibility of the witness." *Johnson, supra,* 528 *N.E.*2d at 571. Further, this procedure is clearly distinguishable from a situation where the judge improperly bolstered the testimony of a child-witness in front of the jury by giving her ice cream, a lollipop and cookies as a reward for her "real" testimony, *State v. R.W.,* 200 *N.J.Super.* 560, 569, 491 *A.*2d 1304 (App.Div. 1985), *aff'd as modified,* 104 *N.J.* 14, 514 *A.*2d 1287 (1986), or where the child sat on the judge's lap in view of the jury while testifying. *State v. Michaels,* 264 *N.J.Super.* 579, 615, 625 *A.*2d 489 (1993), *aff'd,* 136 *N.J.* 299, 642 *A.*2d 1372 (1994).

## IV

Defendant argues that the trial court erred in admitting the tender years statement of B.E. made to D.Y.F.S. worker Gregory. He argues that the probable trustworthiness of the statement, as required by *N.J.R.E.* 803(c)(27), was not established. We disagree.

At an *N.J.R.E.* 104(a) hearing outside the presence of the jury, Gregory's testimony established that she met B.E. and her mother at the hospital on the evening of April 15, 1998, she interviewed B.E. outside her mother's presence, she contemporaneously recorded the interview in a report, she did not ask leading questions, and although B.E. was initially reluctant to talk to her, she discussed other topics which put B.E. at ease, and B.E. described the sexual abuse by defendant. When asked, B.E. denied that she had ever seen defendant touch any of the other children or that he ever touched her with his tongue or mouth.

Judge Goldman made specific findings that B.E.'s statement was a spontaneous response to the questions, the terminology she used was appropriate and consistent with what her mother taught her, there was no motive to fabricate and there were no inconsistencies. He found further support for reliability in B.E.'s denial

of oral sexual acts with her or sexual improprieties with the other children.

We are satisfied the judge considered the correct factors in finding that, considering the time, content and circumstances of the statement, it was probably trustworthy. *See State v. Michaels,* 136 *N.J.* 299, 317–18, 642 *A.*2d 1372 (1994). This finding is supported by substantial credible evidence in the record, and it will not be disturbed on appeal. *State v. Locurto,* 157 *N.J.* 463, 470–71, 724 *A.*2d 234 (1999); *State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964). B.E.'s statement to Gregory was properly admitted.

■ Defendant's argument that there was insufficient evidence to permit the submission to the jury of count two, alleging anal penetration, is without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(2). We merely note that the State's evidence included B.E.'s statement to her mother that defendant "put his penis in her booty [rectum]." Considering the evidence in the light most favorable to the State, the State's evidence was sufficient to support a finding by a reasonable jury of aggravated sexual assault by anal penetration beyond a reasonable doubt. *State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967).

## V

Defendant asserts several improprieties in his sentence. He first contends he should not have received an above-presumptive base term nor a parole disqualifier on counts one and two, aggravated sexual assault. Our review of the record leads us to conclude that the trial judge's findings of fact regarding aggravating and mitigating factors were based on competent and credible evidence, that the judge did not apply incorrectly the applicable sentencing guidelines, and that the sentences on these counts could have reasonably been reached upon a weighing of relevant factors. *State v. O'Donnell,* 117 *N.J.* 210, 564 *A.*2d 1202 (1989); *State v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984).

Defendant further argues that a consecutive sentence on count four, endangering, was inappropriate since this offense was "closely interrelated" to the aggravated sexual assault offenses, and since "the offenses suggest a single period of aberrant behavior." Because of the added element of parental duty, endangering is not included in and does not merge with aggravated sexual assault. *State v. Miller*, 108 *N.J.* 112, 527 *A.*2d 1362 (1987). In support of the consecutive sentence on this count, the judge separately stated the reasons as required by *State v. Yarbough*, 100 *N.J.* 627, 643, 498 *A.*2d 1239 (1985) *cert. denied sub nom., Yarbough v. New Jersey*, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L. Ed.*2d 308 (1986), and relied on *Yarbough* factors that there are no free crimes, the crimes and their objectives are independent of each other, and defendant was being sentenced for multiple offenses. *Id.* at 643–44, 498 *A.*2d 1239. He further noted that he had not imposed consecutive sentences on other counts. To avoid double counting of aggravating factors, *id.* at 644, 498 A.2d 1239, he applied reduced weight to the aggravating factors and imposed a presumptive seven year term with no parole disqualifier. This analysis fully meets the requirements of *Yarbough,* and we find no abuse of discretion in the sentence imposed; *see also Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362. *O'Donnell, supra; Ghertler, supra; Roth, supra.*

The convictions and sentences on counts one, two and four are affirmed. The matter is remanded for entry of an amended Judgment of Conviction vacating the sentence on count three under the doctrine of merger.