UNITED STATES, Appellee

v.

Donald J. BROWN, Master-at-Arms First Class
U.S. Navy, Appellant

No. 13-0244

Crim. App. No. 201100516

United States Court of Appeals for the Armed Forces

Argued May 14, 2013

Decided July 15, 2013

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, STUCKY, and RYAN, JJ., and EFFRON, S.J., joined.

<u>Counsel</u>

For Appellant:  Lieutenant David C. Dziengowski, JAGC, USN
(argued).

For Appellee:  Major David N. Roberts, USMC (argued); Colonel
Stephen C. Newman, USMC, Major Paul M. Ervasti, USMC, Captain
Samuel C. Moore, USMC, and Brian K. Keller, Esq. (on brief).

Military Judge:  Kevin R. O'Neill

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

In a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to his pleas, of one specification of rape of a child, one specification of aggravated sexual assault of a child, two specifications of child endangerment, and three specifications of indecent liberties with a child in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2006). The adjudged and approved sentence included confinement for forty-five years, reduction to E-1, and a dishonorable discharge. On review, the United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the findings and the sentence. United States v. Brown, No. NMCCA 201100516, 2012 CCA LEXIS 448, at *33, 2012 WL 5944972, at *10 (N-M. Ct. Crim. App. Nov. 28, 2012) (unpublished).

On Appellant's petition, we granted review of the following issue:

> GENERALLY, OUTSIDE THE MILITARY JUSTICE SYSTEM, WITNESS
> ATTENDANTS MAY ACCOMPANY A CHILD ON THE WITNESS STAND IF
> THE PROSECUTION SHOWS GOOD CAUSE AND THE TRIAL JUDGE MAKES
> A FINDING OF COMPELLING OR SUBSTANTIAL NEED. HERE, WITHOUT
> GOOD CAUSE SHOWN AND WITHOUT FINDINGS OF COMPELLING OR
> SUBSTANTIAL NEED, THE MILITARY JUDGE ALLOWED A VICTIM
> ADVOCATE TO SERVE AS A WITNESS ATTENDANT FOR A SEVENTEEN-
> YEAR-OLD; THEN THE MILITARY JUDGE REFERRED TO THE WITNESS
> ATTENDANT AS THE COMPLAINANT'S "ADVOCATE" BEFORE THE
> MEMBERS. DID THIS PROCEDURE VIOLATE APPELLANT'S
> PRESUMPTION OF INNOCENCE AND RIGHT TO A FAIR TRIAL?

For the reasons set forth below, we conclude that the military judge did not abuse his discretion under Military Rule of Evidence (M.R.E.) 611(a) when he allowed the victim advocate to sit next to AW during her testimony.

BACKGROUND

The CCA found the following facts:

> The appellant met Ms. RB in July of 2003 and they were married in August of 2004. At the time of the 2004 marriage to the appellant, Ms. RB had four children: MMB, a daughter, age 14; MB, a son, age 12; AW, a daughter, age 11; and JW, a son, age 8. None are the biological children of the appellant.
>
> Ms. RB worked nights shift [sic] and, as a result, the appellant was often left alone in charge of the four children. During these times, the appellant regularly provided the children with alcohol and played drinking games with them. The appellant also provided MMB with pornography. A few months after they were married, while he was home caring for the children, the appellant had sexual intercourse with AW, who was 11 at the time. The appellant then continued to have sexual intercourse with AW over the course of approximately the next four years. The appellant's sexual actions with AW followed a usual pattern -- the appellant would drink alcohol with the children, take AW upstairs under the guise of receiving a massage from her, and thereafter have sex with her in an upstairs bedroom. At one point during the four years AW thought she had become pregnant by him and subsequently suffered a miscarriage. The appellant's assaults of AW only stopped when she threatened to report him in 2008. Also, while the appellant was deployed from November 2006 to November 2007, he sent MMB prurient email messages. In 2009, AW finally revealed the appellant's sexual molestation to her mother.[1] An investigation and this court-martial followed.

_____

[1] AW testified that her mother then sent AW to live with AW's grandparents, but AW "wasn't allowed" to report the rape to the

3

     The appellant's general court martial commenced on 20 June 2011. At the time of the trial, AW was 17 years old and her 18th birthday was mere weeks away.

.  .  .  .

     AW, who was 17 years old at the time of trial, testified as a Government witness.  Her initial testimony began on 20 June 2011; after only 15 questions by the trial counsel, AW started to cry.  As the trial counsel attempted the next question, AW "burst into tears."  AW continued to cry as she struggled to answer more questions.  She then stated "I can't do this," and requested a break.  At that time, the military judge excused the members and discussed with AW the courtroom process.  He informed her that she should discuss with the trial counsel what adjustments she believed he could make to ensure her comfort.[2]  After a short recess, the trial counsel requested of the court that AW's victim advocate be seated next to AW during her testimony.  The defense objected, instead requesting that the victim advocate be seated in the gallery.  The military judge overruled the objection, and placed the court in an overnight recess.

     The following morning, in an Article 39(a) session, the trial defense counsel renewed his objection, arguing that placing the victim advocate next to AW bolstered her credibility to the members.  The military judge overruled defense counsel's objection and stated his intent to allow the victim advocate to sit next to AW during the testimony.  The military judge proscribed any verbal communication or physical contact between AW and her advocate.  Prior

---

police at that time.  AW testified that it was not until after Appellant left her mother that her mother called her "and told us that I was allowed to go to the police."  With the help of her grandmother, AW then promptly reported the rape to local police.

[2] During the Article 39(a), UCMJ, 10 U.S.C. § 839 (2006), session that followed AW's crying, AW could not look at the military judge and gave only nonverbal answers to his questions.

to the members' return to the courtroom, AW was seated on the witness stand and her advocate was seated on the bailiff's chair next to AW. Upon the members' return to the courtroom, the military judge informed the members that sitting next to AW was "an advocate that has been assigned to [AW]." The military judge explained to the members that this was "an accommodation" he had made and that the members were not to interpret her presence as an endorsement of AW's credibility.[3] AW then finished her testimony without further incident. There is no indication that her advocate had any physical contact, verbal communication, or otherwise interfered with the testimony of AW.

2012 CCA LEXIS 448, at *3-*10, 2012 WL 5944972, at *1-*3

(footnotes omitted).

Before this Court, Appellant argues that allowing a support[4] person to accompany a witness on the stand "erodes the

---

[3] The military judge instructed the members that his decision to allow the advocate to sit with AW:

should in no way be interpreted by you as an endorsement by me or the government or anyone else of the credibility of [AW]'s testimony. You will evaluate the credibility of her testimony in the same manner you will any other witness. . . . This is an accommodation I have made. You will infer nothing from it.

[4] Courts generally refer to an adult who accompanies a witness to the stand to facilitate the witness's testimony as an "attendant" or "support person." Compare 18 U.S.C. § 3509(i) ("adult attendant"), and Sexton v. Howard, 55 F.3d 1557, 1559 (11th Cir. 1995) ("adult attendant"), with State v. T.E., 775 A.2d 686, 689 (N.J. Super. Ct. 2001) ("adult support person"), State v. Letendre, 13 A.3d 249, 255 (N.H. 2011) ("support persons"), and Czech v. State, 945 A.2d 1088, 1093 (Del. 2008) ("support person"). Neither the UCMJ nor the Rules for Courts-Martial (R.C.M.) address such a position; therefore, we use the

presumption of innocence and violates an accused's due process right to a fair trial" and is therefore "inherently prejudicial."  Brief for Appellant at 9, United States v. Brown, No. 13-0244 (C.A.A.F. Apr. 11, 2013).  Appellant urges us to require trial judges to find "compelling necessity" before allowing a support person to accompany a testifying witness.  Brief for Appellant at 15; see State v. Rulona, 785 P.2d 615, 617 (Haw. 1990), overruled on other grounds by State v. Mueller, 76 P.3d 943 (Haw. 2003).  But see T.E., 775 A.2d at 696 ("Although these Hawaii cases deem this practice unduly prejudicial, they are 'contrary to the great majority of the reported decisions throughout the United States,' and other jurisdictions 'do not find the authority of these two cases to be compelling.'" (quoting State v. Rowray, 860 P.2d 40, 43 (Kan. Ct. App. 1993))).

Government counsel argues that the military judge did not abuse his discretion under M.R.E. 611 and R.C.M. 801.  Brief for Appellee at 17, United States v. Brown, No. 13-0244 (C.A.A.F.

---

generic term "support person."  We also note that while other courts have analyzed the use of a parent, relative, spouse, or other adult as a support person, in this case Ms. Deweese was designated as a victim advocate.  See generally Dep't of the Navy, Chief of Naval Operations Instr. 1752.1B, Sexual Assault Victim Intervention (SAVI) Program (Dec. 29, 2006); Dep't of Defense Dir. 6495.01, Sexual Assault Prevention and Response (SAPR) Program (Jan. 23, 2012, incorporating change 1, Apr. 30, 2013) (to be codified at 32 C.F.R. pt. 103).  Thus, this case and this opinion only address the use of a trained victim advocate as a support person.

May 1, 2013).  The Government asserts that the facts and circumstances of this case justified the presence of a support person, and the military judge's member instruction limited any vouching effect from the presence of the support person.  Brief for Appellee at 21-22, 25-27.

### DISCUSSION

We review a military judge's control of the mode of witness interrogation pursuant to M.R.E. 611 for abuse of discretion. See United States v. Collier, 67 M.J. 347, 353-54 (C.A.A.F. 2009); cf. United States v. Pope, 69 M.J. 328, 333 (C.A.A.F. 2011) (while "we afford substantial discretion to a military judge's evidentiary rulings," greater deference is given when balancing is conducted on the record).  Similarly, we review a military judge's exercise of "reasonable control over the proceedings" pursuant to R.C.M. 801 for abuse of discretion. See United States v. Satterlee, 55 M.J. 168, 171 (C.A.A.F. 2001).  "For the ruling to be an abuse of discretion, it must be more than a mere difference of opinion; rather it must be arbitrary, fanciful, clearly unreasonable or clearly erroneous." Collier, 67 M.J. at 353 (citing United States v. McElhaney, 54 M.J. 120, 130 (C.A.A.F. 2000) (internal quotation marks omitted).

M.R.E. 611(a) provides that the military judge "shall exercise reasonable control over the mode and order of

7

interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."[5]  Similarly, pursuant to Article 36, UCMJ, 10 U.S.C. § 836 (2006), the President has directed that military judges shall "(2) [e]nsure that the dignity and decorum of the proceedings are maintained" and "(3) exercise reasonable control over the proceedings to promote the purposes of these rules and this Manual."  R.C.M. 801(a).  The discussion of R.C.M. 801 explains that "Courts-martial should be conducted in an atmosphere which is conducive to calm and detached deliberation and determination of the issues presented" and instructs the military judge to "prevent unnecessary waste of time and promote the ascertainment of truth."  R.C.M. 801(a) Discussion.

## ANALYSIS

After reviewing the record and military judge's findings in this case, we hold that the military judge did not abuse his

---

[5] While we do not rely on state authority, we note that a number of states have considered the same issue presented in this case under their equivalent of M.R.E. 611(a).  See, e.g., Letendre, 13 A.3d at 255; T.E., 775 A.2d at 695 (citing the New Jersey version of M.R.E. 611(a) and noting that "[t]he protection of children from undue trauma when testifying is an important public policy goal"); Czech, 945 A.2d at 1095; cf. State v. Rochelle, 298 P.3d 293, 297 (Kan. 2013) (not citing M.R.E. 611, but analyzing for abuse of discretion based on trial judge's duty to keep order and control courtroom proceedings).

discretion by allowing a support person to accompany AW on the stand. This conclusion is based on the following factors. First, although AW was not a child of tender years, the military judge found that she "was not just crying during testimony, [she was] completely unintelligible and unable to speak because she was crying." Moreover, the record reflects an effort on behalf of the military judge to proceed without the accommodation of a support person. When AW first took the stand, she answered trial counsel's questions in one-word or one-sentence answers. After the sixteenth question, the witness "bursts into tears." When trial counsel asked AW if she would be okay, AW continued "crying." After the twenty-first question, the record notes the witness crying and saying "I can't do this." After a pause, the trial counsel asked AW if she wanted a break, and she indicated that she wanted a break. The military judge then recessed the court until the next morning. While he might have again determined following this overnight break whether or not the witness could now testify, in our view, he did not abuse his discretion in not doing so given the prior efforts to do so as well as his observations of the witness the prior day.

Second, the military judge minimized the risk of prejudice to the accused by instructing the advocate not to communicate with the witness and by instructing the jurors to disregard the presence of the advocate. Moreover, there is no evidence --

9

such as an admonition by the military judge or objection by defense counsel -- suggesting that the advocate failed to follow the military judge's instructions.  Nor is there any evidence that defense counsel's ability to cross-examine AW was negatively affected by the advocate's presence.[6]

In this case, the witness was physically overtaken by sobbing and could not provide information to the court.  Where, as here, the military judge took reasonable steps to test the witness's capacity to continue as well as steps to mitigate the risks of prejudice to the accused, it was within the military judge's discretion to conclude that further attempts to proceed with a witness in such a state would "needless[ly] consum[e] . . . time," M.R.E. 611 (a)(2), and do not aid in "ascertainment of the truth," M.R.E. 611 (a)(1).

## CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[6] Appellant urges this Court to require the military judge to make formal findings before allowing a support person to accompany a witness to the stand.  Brief for Appellant at 14, 16.  As noted, we have analyzed the present case under a military judge's discretion pursuant to M.R.E. 611 and R.C.M. 801.  The President and legislature could of course adopt specific procedures for courts-martial to follow when allowing adult attendants, as Congress has in fact done for federal civilian trials.  Cf. 18 U.S.C. § 3509(i) (giving children under the age of eighteen "the right to be accompanied by an adult attendant to provide emotional support to the child," and requiring videotaping of the accompanied testimony but not requiring any formal findings by the trial judge).